KNOWLES LOOM WORKS v. J. VACHER AND R. J. HOGUET.

1. The act of 1889 (*Pamph. L.*, p. 421), requiring conditional sales of personal property to be recorded, applies to a contract of sale made in New York of property to be delivered to and held by the purchaser within this state.

2. A chattel mortgage subsequently given by the purchaser on such property in this state, to secure a pre-existing debt, is, within the meaning of the act of 1889, a mortgage in good faith, and is entitled to priority over the unrecorded contract of sale of which the mortgagee had no notice.

In replevin.    On case certified from the Passaic Circuit.

The questions to be determined in this case are presented by the following certificate:

PATERSON, N. J., May 3d, 1894.

This suit relates to the title of ten silk looms which, about August 1st last, were in the possession of the defendants, and were then replevied by the plaintiff, and returned under bond to the defendants.

The value of the looms was then $1,487.50, which amount, with interest thereon, from August 1st, 1893, the plaintiff will be entitled to recover if it be entitled to a judgment. The looms were originally the property of the plaintiff, a Massachusetts corporation, located in Worcester, Massachusetts, and were delivered by it to the Paris Silk Company, a New Jersey corporation, located in Paterson, under a contract for the sale of them made orally in the city of New York between an agent of the plaintiff and an agent of the Paris Silk Company. According to the terms of the contract the looms were to remain the property of the plaintiff until they were fully paid for, and were to be paid for in installments, at periods ranging from thirty days to six months after delivery.

This contract was never formally reduced to writing, but its terms can be gathered from letters written to each other by the parties in Worcester and Paterson, which refer to the oral contract.

In pursuance of the contract, the looms were delivered by the plaintiff to the silk company, in Paterson, in the latter part of May, 1893, and shortly afterwards notes were given by the silk company to the plaintiff for the amount of the purchase-money. Those notes have never been paid, and after the maturity of the note first due the plaintiff tendered them all back to the silk company before issuing the writ in this cause. On July 5th, 1893, the looms being in the possession of the Paris Silk Company, at Paterson, were mortgaged by that company to the defendant Hoguet, to secure a pre-existing debt due from the company to Hoguet, Mr. Hoguet having agreed with the company that whatever he realized from the mortgage he would distribute among the creditors of the Paris Silk Company proportionately. At that time the silk company was insolvent, and Hoguet knew it, but he had no notice that the looms were not the property of the Paris Silk Company. The title which the defendants now set up depends upon that mortgage. Whether, under these circumstances, the plaintiff or the defendants are entitled to the judg-

ment of the court, is a question reserved and certified to the Supreme Court for its advisory opinion.

JONATHAN DIXON, *Judge.*

Argued at November Term, 1894, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the plaintiff, *William B. Gourley.*

For the defendants, *John W. Griggs.*

The opinion of the court was delivered by

VAN SYCKEL, J. On behalf of the defendants, it is insisted that the sale by the plaintiff to the silk company, being a conditional one, was void as against the mortgage of Hoguet by virtue of the provisions of the act of May 9th, 1889, entitled "An act requiring contracts for the conditional sale of personal property to be recorded." *Pamph. L. p.* 421.

The important features of this act are contained in the first and second sections, which are quoted as follows:

" 1. That in every contract for the conditional sale of goods and chattels hereafter made which shall be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things contracted to be sold, all conditions and reservations which provide that the ownership of such goods and chattels is to remain in the person so contracting to sell the same, or other person than the one so contracting to buy them, until said goods or chattels are paid for or until the occurring of any future event or contingency, shall be absolutely void as against subsequent purchasers and mortgagees in good faith, and as to them the sale shall be deemed absolute unless such contract for sale, with such conditions and reservations therein, be recorded as directed in the succeeding section of this act.

" 2. That the instruments mentioned in the preceding section shall be recorded in the clerk's office of the county wherein the party contracting to buy, if a resident of this

state, shall reside at the time of the execution thereof, and if not a resident of this state, then in the clerk's office of the county where the property so conditionally bought shall be at the time of the execution of such instrument; *provided,* that in any county where the office of register of deeds exists, or hereafter may be created, such instruments shall be recorded in the office of such register."

The silk company was the party contracting to buy, and was a resident of this state, located at the city of Paterson, in the county of Passaic. The contract of sale was not recorded, as required by the act of 1889.

Two points are involved:

*First,* whether the statute of 1889 is applicable to this case in view of the fact that the contract of sale was made in the State of New York; and, *second,* whether the defendant Hoguet, in taking a mortgage to secure a pre-existing debt due from the Paris Silk Company to him, became a mortgagee in good faith.

The act of 1889 directs the contract to be recorded in the county where the buyer resides, if a resident of this state at the time of the execution of the contract, and if not a resident of this state, then in the county where the property shall be at the time of the execution of such instrument.

The manifest purpose of the act is to render inefficacious the conditional sale of all goods held in this state where the contract of sale is not recorded.

There is an implied mandate in the act that the contract of sale shall be in writing, otherwise it could not be recorded and the act would be futile.

The *situs* of the property, and not the *lex loci contractus,* determines the validity of such sales.

The contract in this case was made in New York, but the property was to be delivered, and was delivered to, and held by the purchaser in this state.

Great contention and uncertainty as to the title to personal property would be produced if purchasers and mortgagees were bound to ascertain whether the vendor or mortgagor

acquired title in another state before they could contract with safety in reference to it.

Judicial decision in this state has been hostile to such an interpretation of the law. *Marvin Safe Co.* v. *Norton,* 19 *Vroom* 410.

Where the *situs* of personal property is in this state, it is subject to our statutory provisions in the adjudications regarding it in our own courts, in a suit to which a citizen of this state is a party.

The force of our statutes is recognized in *Varnum* v. *Camp,* 1 *Gr.* 326, and in *Bentley* v. *Whittemore,* 4 *C. E. Gr.* 462.

" No one can seriously doubt that it is competent for any state to adopt such a rule in its own legislation, since it has perfect jurisdiction over all property, personal as well as real, within its own territorial limits. Nor can such a rule, made for the benefit of innocent purchasers and grantors, be deemed justly open to reproach of being founded in a narrow or selfish policy." *Story Confl. L.,* § 390.

It seems clear that the New Jersey statute must dominate this controversy.

As to the other question to be discussed, there is more conflict in the cases.

The New York Chattel Mortgage act of 1833, from which our act is copied, was construed by the New York Court of Appeals in *Van Heusen* v. *Radcliff,* 17 *N. Y.* 580. It is there held that an assignee in trust for creditors cannot impeach a prior mortgage for want of registry.

Judge Denio, in deciding that case, relied upon previous decisions in New York, that a voluntary trustee, under such an assignment, was not a *bona fide* purchaser for value.

This case, I think, was well decided. An assignee for the benefit of creditors acquires no title except strictly that vested in his assignor. He stands in the place of the assignor, with the mere duty of distributing his property among such creditors as may elect to come in for a dividend. The title of the assignor is subject to the prior unregistered mortgage, and in that condition it passes to the assignee. Standing as the

mere representative of the assignor, the assignment being voluntary and without consideration, he acquires no title which can be adverse to that of the prior mortgagee. He takes nothing except what his assignor had at the time of the assignment. He acquires, as against his assignor, no lien upon the property for his own benefit upon which he can establish a claim hostile to one who holds by a previous conveyance.

The current of adjudication undoubtedly is that one who takes by voluntary assignment for the benefit of creditors cannot successfully assail a prior equitable title or an unregistered conveyance previously made by the assignor. In the subsequent case of *Thompson* v. *Van Vechten,* 27 *N. Y.* 580, Judge Denio ruled that a precedent debt does not qualify the mortgagee of a chattel as one in good faith under the New York act of 1833, so as to entitle him to question a prior mortgage for a default in refiling it.

In support of this decision he cites the cases of *Van Heusen* v. *Radcliff, supra,* and *Slade* v. *Van Vechten,* 11 *Paige* 21, in both of which cases the party challenging the validity of the prior unregistered conveyance was a voluntary assignee for the benefit of creditors.

He also supported his views by reference to the New York doctrine, that a person who purchases a negotiable note on account of an antecedent debt is not a *bona fide* holder for value, and to the case of *Dickerson* v. *Tillinghast,* 4 *Paige* 215.

The New York rule with regard to promissory notes is not the law of this state. In the case last cited the contest was between an unrecorded mortgage on lands and a subsequent purchaser for a pre-existing debt.

To give priority to a subsequent purchaser of real estate, the New York statute required the subsequent purchaser not only to be in good faith but also for a valuable consideration.

The distinction between the language used in the Recording act concerning real estate and the Chattel Mortgage act was not adverted to in 27 *N. Y.*

The conclusion that the term *bona fide* had acquired such

meaning as was attributed to it in that case is not supported by the authorities there cited and relied upon.

An examination of our own cases will show that a different rule prevails in this state.

In *Mingus* v. *Condit,* 8 *C. E. Gr.* 313, in which it is claimed that the New York rule was adopted, Chancellor Zabriskie held that a mortgage of lands from a grantee whose deed is void against creditors of his grantor under the second and third sections (now sections 12 and 13) of the statute of frauds, will not be protected by the sixth (now 15th) section of that act, if he took his conveyance for a pre-existing debt.

The language of the sixth section is for " good consideration and *bona fide.*" The learned chancellor said that the mortgagee in that case was a mortgagee in " good faith," but not for a good consideration within the meaning of said section. He said he felt bound by the statement made by Chief Justice Green in *Allaire* v. *Hartshorne,* 1 *Zab.* 665, that although a pre-existing debt is sufficient consideration to make the endorsee of negotiable paper a *bona fide* holder, yet the rule as to personal property is, " that a purchaser who has obtained title as a mere security for a pre-existing debt, is not entitled to the character of a *bona fide* purchaser for value."

That this is a correct statement of the rule which prevailed in equity will not be questioned.

Chancellor Zabriskie manifestly recognized the distinction between a purchaser " in good faith," and a purchaser " in good faith and for a valuable consideration ; " a distinction in no respect inconsistent with the rule as asserted by Chief Justice Green in *Allaire* v. *Hartshorne.*

*Pancoast* v. *Duval,* 11 *C. E. Gr.* 445, and *De Witt* v. *Van Syckel,* 2 *Stew. Eq.* 209, followed *Mingus* v. *Condit,* but the contesting liens were both upon real estate, in regard to which the language of our Recording act is " *bona fide* purchaser or mortgagee for valuable consideration."

In *Uhler* v. *Semple,* 5 *C. E. Gr.* 288, Chancellor Zabriskie said that the rule that a prior debt is not sufficient to make

one a *bona fide* purchaser for value has never been adopted in this state. He gave the mortgage on chattels, given to secure an antecedent debt, priority over a prior equity of which the mortgagee had no notice.

This case differs from the one in hand in that the claim counter to the chattel mortgage was merely an equitable one without legal title, while here the controversy is between two creditors having a legal title.

The creditor with an equitable title only seems to be in a more meritorious position to assail the subsequent mortgage given for a pre-existing debt than is the holder of a prior unrecorded mortgage.

1. Because the equitable mortgage arises out of the application of equitable principles to existing circumstances and conditions. It is not in writing, and cannot be recorded as required by the fourth section of the Chattel Mortgage act. It can, therefore, be superseded only by applying to it the policy of the Registry act.

2. The holder of the mere equity is chargeable with no neglect of any act which would fortify his position, while the holder of the prior unrecorded mortgage has failed to do what would have rendered his title impregnable.

In *Traphagen* v. *Hand,* 9 *Stew. Eq.* 384, the assignee of a judgment which was alleged to have been paid was given priority over a subsequent judgment. The assignee, although part of the consideration for the assignment was a prior debt of the judgment debtor, was held to be a *bona fide* purchaser. This case was reviewed by the Court of Errors and Appeals (11 *Stew. Eq.* 613), and affirmed on another ground, but the court above, while dissenting from the proposition that a judgment debtor could revive a judgment which had been paid, so as to supersede the lien of a subsequent judgment creditor, expressed no dissent from the declaration that the assignee for an antecedent debt was an assignee in good faith.

The learned Vice Chancellor who decided *Sweeny* v. *Williams,* 9 *Stew. Eq.* 459, evidently did not question the sound-

ness of the doctrine stated by Chancellor Zabriskie in Uhler *v.* Semple.

The Vice Chancellor followed the same case in *Butterfield* v. *Okie,* 9 *Stew. Eq.* 482, and gave to the mortgage taken for a pre-existing debt priority over the equity of which the mortgagee had no notice.

In the absence of registry laws the subsequent chattel mortgage taken for a prior debt will not prevail over the older encumbrance, but this does not result from the fact that it is not in good faith because given to secure an antecedent debt, for the rule *prior in tempore potior in jure* applies equally, whether the latter mortgage is for a present or past indebtedness.

As against a subsequent mortgage, not in good faith, a prior equity is always enforceable, and, therefore, in order to permit the subsequent mortgage for previous indebtedness to supersede the prior undisclosed equity, it must be conceded that such mortgage is in good faith. In all the decisions giving such precedence to the subsequent mortgage the quality of good faith has been, and necessarily must have been, attributed to the mortgage.

There is no reason why the interpretation given to the term "good faith" in these adjudications between the subsequent legal title and the prior equity shall not be applied in construing the registry laws. That which is good faith between such contestants must be good faith as between mortgagees under the statute.

There is no antagonism between this view and the case of *Shaw* v. *Glen,* 10 *Stew. Eq.* 32, where it is held that a voluntary assignment of property for the benefit of creditors does not vest in the assignee such a title that he can claim precedence over a previous chattel mortgage because it is unrecorded. In making this statement, the case of *Graham Button Co.* v. *Spielmann,* 5 *Dick. Ch. Rep.* 120, and *Pillsbury* v. *Kingon,* 6 *Stew. Eq.* 286, have not been overlooked.

In the former case it was held that the receiver of an insolvent corporation is the representative of its creditors, and

as such may, by suit or defence, avoid any instrument which is void as against them.

That is undoubtedly true, but a chattel mortgage unrecorded is not void as against creditors; it is good against the debtor and against general creditors in the absence of fraud, and can be assailed only by judgment creditors. It was, therefore, necessary for the decision in the Spielmann case to hold, as the Vice Chancellor did hold, that a creditor to be in a position to contest the validity of a chattel mortgage must have his debt fastened on the mortgagor's property, and that such was the effect of the proceedings in insolvency.

In voluntary assignments, where the previous liens are honest, although they may be voided by subsequent judgment creditors, " the assignee takes the estate assigned in the same plight and condition in which his assignor held it." There is nothing in the procedure of a voluntary assignment which elevates the assignee to a higher plane than the assignor himself occupied.

The effect of proceedings in involuntary assignments, under the insolvent laws, is to appropriate the property of the debtor exclusively and irrevocably to the payment of debts, which is held to establish a lien, while in voluntary assignments no appropriation of property is made unless creditors elect to come in.

The case of Pillsbury *v.* Kingon was a voluntary assignment for the benefit of creditors where a prior conveyance was set aside at the instance of the assignee, on the ground that it was fraudulent.

The difference between a conveyance made to defraud creditors and one given to secure an honest obligation is too obvious to need comment.

This review of the cases shows that while it has been held that under our statutes requiring the subsequent mortgage to be not only in good faith, but also for a valuable consideration, a mortgage to secure an antecedent debt cannot supplant a prior unrecorded mortgage; and while it has been also held that an assignee under a voluntary assignment cannot set

aside a previous mortgage because it is unrecorded, there is no authority for the contention that a subsequent chattel mortgage given for a pre-existing debt is not superior to a prior unrecorded mortgage under our legislation, which pre-scribes that the only condition necessary to confer supremacy shall be that the subsequent encumbrance be taken in good faith.

The only case expressly to the contrary is *Milton* v. *Boyd,* 4 *Dick. Ch. Rep.* 142, but this is not, in my judgment, sup-ported by the weight of authority in this state, nor is it in line with the policy of our registry laws.

That the Chief Justice, who delivered the opinion of the Court of Errors and Appeals in *First National Bank* v. *Cum-mins,* 12 *Stew. Eq.* 577, did not entertain the views expressed by the Vice Chancellor in Boyd v. Lindsay, is apparent from the following citation from his opinion : " In the argument addressed to this court in behalf of the appellant, it was a point much relied on that the *cestui que trust,* in whose favor the mortgage was given, does not, as it was insisted, occupy the position of a *bona fide* purchaser, on the ground that such encumbrance rested exclusively on the consideration of a past indebtedness.  In this respect, the decision of the case of *Mingus* v. *Condit,* 8 *C. E. Gr.* 313, was relied on, and in that case the doctrine is maintained ' that a deed or mortgage to a *bona fide* purchaser or mortgagee, for which the only consid-eration is the payment of a previous debt,' is not within the sixth section of the statute of frauds.  But the doctrine of that case cannot be sustained."

I have previously endeavored to show that, conceding Mingus v. Condit to be well decided, it gives no support to Boyd v. Lindsay.  The latter case is decided upon the au-thority of Mingus v. Condit, Pancoast v. Duval and De Witt v. Van Syckel, all of which were cases under a recording act, containing the words " in good faith and for a valuable con-sideration," while in the act now applicable, passed after these decisions were announced, the words " for valuable considera-tion " are not present.  The various Registry acts of our state

being *in pari materia*, it must be considered that the omission from the act of 1889 of important words, of well-understood import, was for the purpose of leading to an interpretation different from that which the previous legislation had received.

If it had been intended that the construction which had previously been put upon the sixth section of the statute of frauds, and the Recording act relating to real estate should be applied to the Conditional Sale act, such controlling words as " for valuable consideration " would not have been omitted.

The language of the act of 1889, " subsequent purchasers and mortgagees in good faith," is clear. It has no relation to the consideration of the mortgage except as to its honesty. A past consideration in that respect is as good as a present consideration.

Such a mortgage is plainly one in " good faith," and that puts it within the protection of the statute.

The object of the statute is to get rid of secret and latent equities.

Public policy, as asserted in the extension of the registry laws, requires that the public record should show the ownership of personal property, and a construction which is favorable to that end should be given to the act.

The failure to record tends to make transactions in personal property insecure, and, therefore, the mortgagee, who has created that condition against which the statute is aimed, has no just claim to outrank the creditor who, subsequently, secures his debt. The fact that the mortgage was taken for the benefit of the mortgagee and others does not impair its efficacy, nor assimilate it to the title, which is taken under a voluntary assignment for the benefit of creditors. The mortgagee acquired title for his own benefit, and gave as between him and the mortgagor a valuable consideration for it.

The Circuit Court should be advised that the subsequent mortgagee is entitled to judgment.