Protection Building and Loan Association v. Knowles.

THE PROTECTION BUILDING AND LOAN ASSOCIATION

*v.*

EMMA J. KNOWLES et al.

1. A mortgage given by a purchaser of real estate, before the purchase, to a third person to secure money advanced for the purpose of making the purchase, must be postponed to the purchase-money mortgage executed and delivered to the vendor at the time of the delivery of the deed by the vendor, the vendor having no notice of the mortgage previously executed by the purchaser.

2. As to money advanced to the purchaser prior to the purchase, such mortgagor is not a subsequent mortgagee within the Registry act (*Rev. p. 706 § 22*), and is not preferred to the purchase-money mortgage by reason of prior registry without notice.

3. As to money advanced on such mortgage, subsequent to the purchase and without notice of the purchase-money mortgage, the mortgage is to be preferred to the purchase-money mortgage subsequently recorded.

On final hearing on pleadings and proofs.

*Mr. George E. Clymer, Mr. W. Bradford Smith* and *Mr. Frank E. Bradner,* for the complainant.

*Mr. Edward S. Atwater,* for the defendant Chickering, administrator *ad prosequendum* of A. L. Van Blarcom, deceased.

EMERY, V. C.

The bill in this case is filed to foreclose a mortgage for $2,500 with interest, given to the complainant, a building and loan association, by the defendants Emma J. Knowles and Francis W. Knowles, her husband, upon premises conveyed to Mrs. Knowles by A. L. Van Blarcom, and the question is whether, for the whole or any part of this sum of $2,500, the association mortgage is a lien prior to a mortgage of $5,000 given to the vendor by Mr. and Mrs. Knowles to secure part of the purchase-money of the premises. This mortgage to the association, which bears the same date as the deed from Van Blarcom to Mrs. Knowles, refers to the premises as conveyed to Mrs. Knowles by that deed, and then recites that "it is given to secure the payment of part of the purchase-money mentioned in said deed which has been advanced by the said association." The whole purchase-price of the property was, in fact, $6,000, and upon the delivery of the deed a payment of $1,000 in cash was made and a mortgage by Mr. and Mrs. Knowles to Van Blarcom for $5,000, the balance of the purchase-money, was delivered to the attorney of the vendor, Van Blarcom. The complainant, before the delivery of the deed, advanced to the purchaser the sum of $1,000, and subsequently to the delivery of the deed advanced the further sum of $1,500. The $1,000 advanced before the delivery (or its proceeds) was used for making the cash payment on the purchase to the vendor, but the $1,500 afterwards advanced was not, nor was any part of it used for purchase-money. The grantor, Van Blarcom, who was an uncle of Mr. Knowles, the husband of the grantee, lived in California, and after executing the deed there, on the 15th of

December, 1891, sent it through his business agents to Mr. Parker, a counselor-at-law of New York, to deliver to Mr. Knowles, the husband of the grantee, upon receiving from him the cash payment of $1,000 and a purchase-money mortgage for $5,000. The payment of $1,000 was made and the Van Blarcom mortgage delivered by Mr. Knowles to Mr. Parker in New York, on January 11th, 1892, and at the time of the exchange of the papers, Mr. Parker, in order to protect the purchase-money mortgage, proposed to retain the deed, in order to record it at the same time with the purchase-money mortgage, but upon Mr. Knowles' solicitation he finally consented to deliver both the deed and the mortgage to Mr. Knowles for the purpose of recording them. The deed and this mortgage to Van Blarcom, which were both dated December 15th, 1891, were, at Knowles' request, delivered to Knowles in New York, on January 11th, 1892, were taken by him to Newark, and on January 12th, 1892, he delivered the unrecorded deed to Mr. W. Bradford Smith, the solicitor of the complainant, who then advanced to him for the complainant $1,500, the balance of the complainant's mortgage, and immediately forwarded the unrecorded deed, together with the complainant's mortgage, to the Union county clerk for recording, and the deed and complainant's mortgage were both recorded on January 12th, 1892. Knowles retained the Van Blarcom purchase-money mortgage in his possession until January 20th, 1892, when he sent it to the clerk's office for record. The $1,500 advanced by the complainant on January 12th, 1892, was made by a check of the association, but whether to the order of Mr. or Mrs. Knowles does not appear. It was not, in fact, used for payment of any part of the purchase-money, but the complainant claims that its mortgage was made, executed and recorded, so far as it is concerned, in good faith, and without any knowledge or notice of the Van Blarcom mortgage, is a prior lien for the whole amount secured thereby, as well the $1,000 advanced before the delivery of the Van Blarcom mortgage as the $1,500 subsequently advanced. Mr. Van Blarcom died shortly before the filing of the complainant's bill, and the defendant William H. Chickering, who has been appointed his

administrator *ad prosequendum*, claims that the complainant had notice of his mortgage, and by cross-bill alleges also that Knowles was, by reason of facts therein stated, the complainant's agent in recording its mortgage, and that by reason of his agency the complainant was chargeable with actual knowledge of defendant's mortgage. This agency of Knowles is denied in the answer to the cross-bill, which also denies any knowledge or information of defendant's mortgage until after the advance of its money and the recording of its own mortgage. The answer to the cross-bill further alleges (on information) that it was distinctly understood and agreed, at the time of the delivery of the Van Blarcom purchase-money mortgage, that the Van Blarcom mortgage should be a second mortgage upon the premises.

No evidence whatever has been produced in support of this latter allegation, nor was Mr. Knowles called to contradict the statements of Mr. Parker, Van Blarcom's attorney, in reference to the occurrences at the time of the delivery of the deed. These statements show that the deed and purchase-money mortgage were delivered by Mr. Parker to Mr. Knowles, to be recorded together, and that Mr. Parker, in consenting to this arrangement, relied upon Mr. Knowles' professional integrity and upon his relationship to Mr. Van Blarcom. At the time of the delivery of the deed and mortgage, Mr. Parker had no information, or even cause for suspicion, that Knowles and his wife had already executed a mortgage to complainant upon the premises, nor is there any evidence that Van Blarcom, the vendor, knew that any such mortgage was proposed. One of Mr. Knowles' letters to Mr. Parker, dated on March 5th, 1892, refers to a letter of Van Blarcom to Knowles, dated February 2d, 1892, in which (as Knowles writes) Van Blarcom denies that he made any agreement that his (Van Blarcom's) mortgage should be a second mortgage, but this letter of Van Blarcom's was not produced.

No agreement for postponement of the purchase-money mortgage being shown, the question in the case is whether, for the whole or any part of the money advanced upon its mortgage, the complainant is to be preferred to the purchase-money mortgage.

The complainant bases its right to preference upon the claim

that for the whole amount of the mortgage it is "a subsequent *bona fide* mortgagee for a valuable consideration, not having notice of defendant's unrecorded mortgage," and therefore within the protection of the statute.  *Rev. p. 706 ¶ 22.*

The facts in the case show, in my judgment, that Knowles was not the agent or attorney of the complainant in any part of the transaction, and the question of notice to the complainant depends upon the knowledge or information received by Mr. Smith, the regular attorney of the association, who was the only person acting for the complainant in reference to the loan. No proof of any actual notice of defendant's mortgage, on the part of Mr. Smith, is shown, and his own statement, under oath, when called as defendant's witness, was, that before the mortgage of the association was taken he did not know from Mr. Knowles that he proposed to give his uncle a mortgage for any part of the purchase-money. Knowles, in his letter of March 5th, 1892, to Parker, above referred to, had stated that before executing the two mortgages he had talked over the matter with Mr. Smith, but Mr. Smith, being asked on the witness-stand as to his conversations with Knowles, said that he had many conversations with him, but that he had no conversation with him about there being two mortgages, and that he does not recollect any conversation with Knowles, prior to the mortgage, that the mortgage he gave to him (Smith) should be prior to the mortgage he intended to give to Van Blarcom for the balance of the purchase-money. Knowles was not called by the defendant nor was he examined by complainant except upon the question of agency.

In the absence, therefore, of proof of actual notice of the Van Blarcom mortgage on the part of Mr. Smith, the whole question as to such notice depends upon whether the association is, as to any part of the sum secured by its mortgage, to be charged with constructive notice of the existence of the Van Blarcom mortgage.

The provisions of the Registry laws, validating unrecorded deeds or mortgages in favor of subsequent grantees or mortgagees, are not construed to require actual notice of the unre-

corded conveyance, but to adopt the general doctrine of courts of law and equity as to notice. *Holmes* v. *Stout, 2 Stock. 419* (*Errors and Appeals, 1855, Green, C. J., p. 426*).

The defendants' counsel contends that the complainant is to be so charged with constructive notice because the evidence in the case shows that Mr. Smith, the complainant's attorney, had actual information of facts which, as he insists, were sufficient to put him upon inquiry as to whether the purchase-money was paid; that such inquiry, if it had been prosecuted, would have led to the disclosure of the existence of the purchase-money mortgage; that the failure to prosecute such inquiry was negligence upon the part of complainant's attorney or agent, and, as a result, the complainant must be now charged with notice of the fact which would have been disclosed but for the negligence of its attorney. The additional facts in the case, bearing upon this question of the delivery of the mortgages, are as follows, Mr. Smith's connection therewith being specially stated wherever it occurred :

On December 7th, 1891, Knowles, who had prepared the deed from his uncle, Van Blarcom, enclosed it to the latter in California, by letter of that date, for execution and acknowledgment. The deed was dated December 15th, 1891, and was acknowledged on that day by Van Blarcom, in California.

On the same day, Van Blarcom enclosed the deed to Messrs. Coombs, Crosby & Eddy, of New York, with directions to deliver to Mr. Knowles and receive from him $1,000 cash, and a mortgage on the property for $5,000, payable in two years, duly executed, and directing the employment of Mr. Parker. On January 2d, 1892, Knowles wrote Coombs, Crosby & Eddy that Mr. Van Blarcom had written him that he had placed with them a deed for land in Summit, New Jersey, and had authorized them to deliver the same to him on receipt of $1,000 cash and a mortgage for $5,000, and stating that he would call upon them Monday, January 4th, between three and four o'clock in the afternoon, prepared to close the transaction. What communication had passed between Knowles and the association previous to this time, January 2d, 1892, in reference to applying for or

obtaining a loan for them on the property, does not appear, but the mortgage to the association was acknowledged on January 4th, 1892, and Smith says that it was acknowledged before him on that day and was in his possession from that day until it was recorded. There is no other proof of any delivery to Smith or the association at any time, or of any express agreement or understanding on the part of Smith as to the terms of his holding the mortgage before the actual advance of the money, or of any contemplated future delivery of the mortgage. Knowles had been a student in the office of Fort & Smith (in which Smith was a partner) up to June, 1891, when he was admitted to the bar, and at this time had desk room in the office and was allowed to print his name on the firm's cards and letter-heads, but had no connection with or interest in the firm.

The complainant's mortgage was, as Smith states, drawn by Knowles, in order to save the expense of Smith's drawing it, Knowles giving Smith the date of his deed, and Smith also witnessed the execution of the mortgage. The source from which this information as to the true date of the deed was derived by Knowles, so that he could communicate it to Smith in time to insert the date and execute the mortgage on the 4th of January, does not appear, but Smith says that Knowles told him the deed was in New York, or he was going to New York for it. He further says:

"I told Knowles in drawing the mortgage to make it a purchase-money mortgage, and whatever of the money is necessary to get your deed you can pay to your uncle, and the making of it a purchase-money mortgage will avoid the necessity of searching for judgments against your wife."

The purchase-money clause was inserted and no searches for judgments against Mrs. Knowles were made. Smith relied on Knowles for the searches. Smith also says that he didn't know how much of the $2,500 Knowles required, or whether he required all to get his deed, but that, on the following Saturday, January 9th, Knowles told him that he needed $1,000 of the money to get his deed, and that he (Smith) then went to the treasurer of the association and asked him for a check for the

amount of the Knowles loan, but that the treasurer, on that application, did not have the whole amount ($2,500) subject to his check, and Smith says that he then told the treasurer that Mr. Knowles required only $1,000 to get his deed, whereupon the treasurer gave him a check for $1,000, payable to Smith's order. On the 9th of January, and before the delivery of the deed in New York, Smith endorsed this check to either Mr. or Mrs. Knowles as part of the loan. The check is not produced. On January 9th Knowles went to Parker's office in New York with a check for $1,000, to the order of Coombs, Crosby & Eddy, and a mortgage for $5,000, but on account of a mistake in the description the mortgage was not accepted by Mr. Parker, and Mr. Knowles took back the mortgage for correction, leaving the check, in the meantime, in Mr. Parker's possession. This mortgage to Van Blarcom was also dated December 15th, 1891 ; was declared to be given to secure the payment of part of the purchase-money, and was acknowledged on January 4th before Joseph K. Franks, a master in chancery. The mortgage, having been corrected, was, on the 11th day of January, delivered to Mr. Parker and handed by him to Knowles to record with the deed, under the circumstances above stated, and Mr. Parker retained the check for $1,000 as the cash payment. The unrecorded deed was, on January 12th, handed by Knowles to Smith, who then looked at the deed and, as he says, he thinks he then examined it and that he must have noticed the consideration money, which was $6,000.

Smith had retained the association mortgage in his possession since its execution on the 4th of January, and had, in the meantime, received from the association a check for $1,500, the balance of this loan. Upon receiving the deed from Knowles, he endorsed over this check and handed it to Knowles, without making any search for mortgages by the purchasers since the date of the deed or of its delivery, and without, as he says, making any further inquiry whatever of Knowles as to the payment of any part of the purchase-money.

In reference to his knowledge of the financial condition of Knowles at this time. Mr. Smith says that the $1,000 which

Knowles took from him was all that he knew of his having, positively, but that the deed was made to Knowles' wife, and he (Smith) didn't know what his wife had, but he knew that the wife's father was a responsible man—a man of means. This knowledge did not appear to be the result of any inquiries made in this transaction, nor does Smith swear that he made the advance on reliance on the advance of the money by either Mrs. Knowles or her father.

Under this state of facts it is clear, I think, that as to the $1,000 which was advanced prior to the delivery of the deed, the association mortgage cannot be preferred to the purchase-money mortgage. A purchaser who receives a deed, and, as part of the same transaction, delivers a mortgage to the vendor for part of the purchase-money, has, so far as that mortgage is concerned, only such an instantaneous and temporary seizin that the purchase-money mortgage must be superior to all conveyances or encumbrances executed prior to the inception of his estate. This is the law as settled in reference to prior judgments, mechanics' liens and other prior claims against the purchaser (*Wallace* v. *Silsby, 13 Vr. 1* (at *p. 8 &c.*), and cases cited ; *Clark* v. *Butler, 5 Stew. Eq. 664*), and must, for the same equitable reasons, be applied to mortgages on the property executed by a mortgagor before he receives his deed. As was said by Chief-Justice Church, in *Dusenbury* v. *Hulbert, 59 N. Y. 541, 545 :* "A vendor of real estate has no occasion to examine the records for encumbrances created prior to his conveyance. He has the power to protect himself by a qualified or conditional transfer or by any legal mode of creating a lien to secure himself for unpaid purchase-money. When he conveys and instantly takes a conveyance as such security, no authority is needed to demonstrate the gross injustice of permitting a prior mortgage from intervening to his prejudice." In this case there was nothing to put the vendor or his attorney upon inquiry, nor was either of them, under the circumstances of this case, charged with any duty of inquiry in favor of any prior claimant under the purchaser, whether by mortgage or otherwise.

As to this $1,000, it should also be noticed that the Mortgage

Registry act only protects *subsequent* and not prior mortgages. If, therefore, the association mortgage is, under the facts above stated as to delivery, to be considered as taking effect as a present conveyance by the purchaser as early as January 4th, the day of its execution and acknowledgment, or on January 9th, the day of advancing the $1,000, the mortgage, to that extent, was a mortgage prior in time to the purchase-money mortgage, and must, as to this amount, rest for priority not upon the statute, but upon its equity, independent of the statute. For the reasons above stated no such equity exists as to the purchase-money mortgage, if the association mortgage be considered as delivered at the time of the advance of the $1,000 and prior to the delivery of the deed. If the association mortgage is to be treated as delivered after the delivery of the deed, on January 11th, and as delivered at the time of the advance of the $1,500, then clearly, as to the advance of $1,000 made on January 9th, the mortgage must be considered as delivered to secure an antecedent debt and, to that extent, the association is not a mortgagee " for a valuable consideration," under the Real Estate Registry acts. *Knowles Loom Works* v. *Vacher, 28 Vr. 490,* and cases cited, especially *Mingus* v. *Condit, 8 C. E. Gr. 313,* and *Dewitt* v. *Van Sickle, 2 Stew. Eq. 209,* establish that a precedent debt is not a valuable consideration within the meaning of the Registry acts relating to real estate. The only proof as to the time and circumstances of the delivery of complainant's mortgage is, as I have above stated, that it was executed and acknowledged before Smith on January 4th and was then taken by him and retained in his possession and without any further agreement as to delivery, until January 12th, when it was sent for record with the deed.

As to the $1,500 advanced after the delivery of the deed and of the Van Blarcom mortgage, the complainant is, to this extent, clearly a subsequent mortgagee for a valuable consideration, and, inasmuch as, at the time of the advance and of the subsequent record of its mortgage, the Van Blarcom mortgage had not been recorded, the complainant is, by reason of priority of record, entitled to priority to this extent, provided it is, within the language of the statute, a *bona fide* mortgagee " not having notice " of the defendant's mortgage. And, as is well settled, the com-

plainant may rest on its priority of record, and the burden of establishing notice is upon the holder of the prior unrecorded mortgage.  *Hendrickson* v. *Woolley, 12 Stew. Eq. 307 (Errors and Appeals, 1884).*

The Van Blarcom mortgage, moreover, might have been protected in this case under the Registry laws, by recording it immediately, even if the deed were not recorded.  Under the rule settled in *Semon* v. *Terhune, 13 Stew. Eq. 364 (Chancellor Runyon, 1885)*, a subsequent mortgagee is bound to search the records for mortgages subsequent to the date of his mortgage, even if his mortgagor's deed is not recorded.

And where, under the Registry laws, a vendor's mortgage may be fully protected by a prompt registry, it would be against the policy of these laws to impose on a subsequent purchaser or mortgagee the duty of protecting prior rights by inquiry.  These prior rights may, under the laws, be fully protected by record, and, as was said by Lord Selborne in *Agra Bank* v. *Barry, L. R. 7 E. & I. App. 135, 157*, the fact that statutes so provide is one fact or circumstance to be considered in determining whether and to what extent the duty of inquiry arises, and is always a fact of great importance.  It is, in my judgment, the fact which, in connection with Mr. Smith's denial of notice, turns the scale in the present case, for, although there are some circumstances in the evidence from which it may perhaps fairly be argued that Smith, on making the advance of the $1,500, did not make all the inquiries which a more cautious attorney and one who placed less reliance on Knowles would have made as to the payment of the whole purchase-money, yet these circumstances do not seem to me sufficiently decisive to dislodge complainant's mortgage as to the $1,500 from the strong position of priority given to it, *prima facie,* by the statute, supported as this is by the oath of Mr. Smith, the only witness called to speak directly upon the question of knowledge.  The defendant might have called Knowles as well as Smith as his witness, and, although not obliged to do so, the failure to call the only other witness who had actual knowledge of the transaction imposes on the defendant. I think, the burden of showing that the indirect

34

or circumstantial evidence relied on clearly establishes a negligence on Smith's part which deprives his client of the benefit of the statute and imposes on it all the effect of an actual notice of which there is no proof. The circumstances are not sufficient to establish that Smith was bound, as against the vendor, to make further inquiries as to the purchase-money on advancing the $1,500. Defendant's counsel relied strongly, if not principally, upon the fact that the complainant's mortgage professed to be a purchase-money mortgage for the whole amount ($2,500), and should therefore be considered, on the face of it, an admission on complainant's part that at least this much of the whole purchase-money was unpaid. But the explanation given by Smith, that on originally drawing the mortgage it was supposed that the whole $2,500 might be needed, prevents the form of the mortgage from having the effect which defendant insists upon. At the time of advancing the $1,000 the association was notified that this amount was all that Mr. Knowles required " to get his deed," and this information then given cannot be considered sufficient to charge Smith, at the time of the subsequent advance of $1,500, with the duty toward the vendor of then inquiring whether or how the purchase-money beyond the $1,000 had been paid. It is also urged that as Knowles had no means beyond the $1,000 advanced by the association, and Smith knew this, he was, on receiving information that the total amount of consideration paid was $6,000, charged with the duty of inquiring as to the payment of the balance before advancing this $1,500. But the conveyance being made by the vendor to Mrs. Knowles, and a deed to her being produced to Smith, it seems to me that, in the absence of information that Mrs. Knowles had not paid the purchase-money, Smith was not charged with any duty toward the vendor of making these inquiries. As to the $1,500 advanced on January 12th, 1892, the evidence, therefore, as I view it, fails to justify a postponement to the defendant's mortgage of the priority given to complainant by the statute, and a decree will be advised directing that, as to this amount, with interest, the complainant's mortgage is a prior lien to the defendant's mortgage, but as to the $1,000 advanced on January 9th, 1892, it is a subsequent lien to the defendant's mortgage.