SAMUEL H. TATE

*v.*

THE SECURITY TRUST COMPANY et al.

[Filed May 26th, 1902.]

1. A *bona fide* assignee for value of a mortgage takes it free from all latent equities existing in favor of third parties.

2. The president of a trust company, acting as attorney for other parties, negotiated the execution of a mortgage to his clients. The mortgage was subsequently assigned to the trust company, it not appearing who conducted this transaction on its behalf.—*Held*, that the company was not chargeable with any knowledge its president may have had in regard to the purpose for which the mortgage was given.

3. An assignee taking a mortgage as collateral security for pre-existing debts, without delivering up the evidence of such debts, was not a purchaser for value.

4. A mortgage of $4,000 was given to secure a note of $3,000. The mortgagee assigned the mortgage to a trust company as security for the note and other pre-existing debts.—*Held*, that the equity of the mortgagor to have the mortgage reassigned to him on payment of the note was superior to the equity of the trust company to hold it for the pre-existing debts. .

On final hearing.

*Mr. David J. Pancoast,* for the complainant.

*Mr. John F. Harned,* for the defendants.

REED, V. C.

On February 2d, 1900, Charles S. and William Solomon entered into a written agreement with Samuel H. Tate, the terms of which were that the Solomons would sell the San Marcos Hotel, in Atlantic City, to Tate for $50,000, free of encumbrances, except a $15,000 mortgage. The consideration to be paid to the Solomons was in the shape of certain properties that were to be conveyed to them by Tate and a promissory note of $3,000

made by Tate. It was also agreed that, to enable the Solomons to raise money upon the $3,000 note, for the payment of taxes and for other payments, Mr. Tate was to make a second mort-gage of $4,000 upon the hotel property sold, which mortgage was to be used by the Solomons to secure the said $3,000 note,. and when this note was paid the mortgage was to be reassigned to Tate.

The agent who acted for Tate in the transaction was Charles B. Prettyman, a real estate broker, who signed the agreement for his principal.

After the agreement for the sale or exchange was signed, Mr. Prettyman sold the property to a Mr. Stehle, and a part of the consideration for such sale was a $4,000 mortgage to be executed. by Mr. Stehle upon the said hotel property. By an arrangement between Prettyman and the Solomons this mortgage was made to the Solomons, instead of to Tate, for the purpose of being used by them to secure the $3,000 note, in accordance with the agreement already mentioned. It was made in this shape, accord-ing to the statement of Mr. Prettyman, to avoid the expense of two papers—first, a mortgage to Tate, and then an assignment from Tate to the Solomons. This mortgage, therefore, belonged to Mr. Tate, after the payment of the $3,000 note, for the security of which it was made to Solomon. William Solomon had the $3,000 note discounted by the defendant the Security Trust Company, of Camden, and the mortgage was delivered as security. Five hundred dollars were paid upon the note, and the trust company refused to redeliver the mortgage to Tate, in case the note should be paid, claiming to hold the mortgage as security for other indebtedness due to them from the Solomons. This bill is filed to compel such delivery.

It is thus perceived that the litigation arises by reason of the incapacity of the agent in conducting the transaction. Had the mortgage for $4,000 been made to Tate, and by him assigned to the Solomons, by an instrument stating the purpose of such assignment, there could not have been the least trouble. As the affair was conducted, the Solomons were invested with the power to make an absolute assignment of the instrument, and this they seem to have done.

It appears that the Solomons are indebted to the Security Trust Company to an amount in excess of the face value of the $4,000 mortgage. This indebtedness, other than the $3,000 note which was discounted at the time of the pledge of the mortgage, so far as appears, was one existing at that time. What occurred between the officers of the trust company and Mr. Solomon, or his agent, at the time of the discount of the $3,000 note and the delivery of the mortgage does not appear, as neither of the parties to the transaction was sworn. The right to hold this mortgage for a pre-existing indebtedness is rested upon an agreement, endorsed upon a note for $3,000, dated February 8th, 1898. By this endorsement William Solomon agreed that the securities hereby pledged (that is, in 1898), together with any that may be pledged hereafter, shall be applicable in like manner to secure the payment of any past or future obligations held by the trust company, and that

"all of my securities in their hands shall stand as one general continuing collateral security for the whole of my obligations, so that the deficiency of any one shall be made good for collaterals for the rest."

The query is thus presented whether the trust company, taking this mortgage as collateral security for a pre-existing debt, stands in a position superior to Tate, who had an equitable interest in the $4,000 mortgage, which, as against him, Solomon misapplied by pledging it for amounts in excess of the $3,000 note.

The general rule that an assignee of a mortgage takes subject to the equities existing in favor of a mortgagor does not apply in this case, because the equity of Tate was a secret equity. While there is some conflict between the cases (*Davis* v. *Cressman, 12 Dick. Ch. Rep. 619*), I think the rule should be settled in this state that a *bona fide* assignee for value of a mortgage takes it free from all latent equities existing in favor of third parties. *Vredenburgh* v. *Burnet, 4 Stew. Eq. 229.*

It is first said that the trust company is not a *bona fide* holder. The point is made that, at the meeting of the parties when the mortgage and the note were finally passed to Solomon, Mr. Cooper, the president of the trust company, was present and

Tate *v.* Security Trust Co.

took part. It is insisted that he had notice of the purpose for which the $4,000 mortgage was made to Solomon, and that his knowledge of that purpose is equivalent to notice to the Security Trust Company, of which he was the head. Mr. Cooper says that he appeared at that conference as counsel for the Solomons, and not as a representative of the trust company. I think he took, for the Solomons, away from that meeting the note and the mortgage. He knew, I think, that the note was to be presented to the trust company for the purpose of raising money upon it. He has no recollection of taking any part in the actual presentation of the note and mortgage to the financial officers of the trust company, and thinks the transaction was with Mr. Longstreth. As already remarked, it does not appear who actually conducted that particular transaction, and as it is not proved that Mr. Cooper took any part in the reception of the bond and mortgage on behalf of the trust company, it is not chargeable with any knowledge of which he may have been possessed.

It is, in the second place, insisted that if the trust company took the mortgage without notice of the equity of Tate, yet it is not a holder for value. I think it quite clear that, to enable an assignee to hold free of any equity existing in a third party, he must not only have taken the mortgage *bona fide,* but *for value.*

In nearly all the cases in which the doctrine of the immunity of an assignee of a chose in action from latent equities has been recognized, the matter of consideration paid by the assignee has not been discussed, but the general rule stated that the assignee takes free from such equities. *Losey* v. *Simpson, 3 Stock. 246; Woodruff* v. *Depue, 1 McCart. 168; Danbury* v. *Robinson, 1 McCart. 213; Starr* v. *Haskins, 11 C. E. Gr. 414.*

In *Putnam* v. *Clark, 2 Stew. Eq. 412,* it was, however, said, *obiter,* that it was the established rule in this state that while the purchaser *for value* of a chose in action is bound by the equities existing against it, in the hands of the original obligor, he is not bound by the equities in favor of third parties, of which he had no notice, citing the line of cases just mentioned.

In *Vredenburgh* v. *Burnet, 4 Stew. Eq. 229,* Vice-Chancellor

Tate *v.* Security Trust Co.

Van Fleet said: "Where two persons holding successive mortgages, recorded in the order of their execution, agree, by writing, that the first shall stand second in order of payment, and the holder of the one made second by the agreement subsequently assigns it to an innocent purchaser *for value,* upon the representation that it is first in order of priority, such an agreement is a latent equity, and is without force against a *bona fide* assignee.

In *Pryor* v. *Wood, 31 Pa. St. 142,* the same remark in respect to a holder for value was made. Upon theory this must be the rule.

Now, regarding the title of the trust company as an equitable title, it having paid nothing, its equity is, to say the least, not higher than the equity of Tate, and the latter equity, being prior in point of time, is the superior. If the trust company, by reason of its written assignment, is to be regarded as holding the legal title to the mortgage, nevertheless, the maxim by which the legal title will prevail between equal equities only aids a purchaser of the legal title for value. *Pom. Eq. Jur.* § *417.*

A purchaser from a trustee must not only get the trust property without notice, but must pay a valuable consideration for it, else he takes the property impressed with the trust; for the rule is that a person who takes a property without paying a full consideration, will hold it charged with the trust of which it is subject, whether he had notice or not. *Perry Trusts* § *217.* The entire doctrine that an assignee of non-negotiable securities takes them free from latent equities, must, upon principle, rest upon the ground that he is an assignee for value.

The next question is whether an assignee taking a mortgage for a pre-existing debt, without delivering up the evidence of such debt, but taking it merely as collateral security for its payment, holds it as purchaser for value. In my judgment he does not.

It is true that it was held, in the case of *Allaire* v. *Hartshorne, 1 Zab. 665,* following the doctrine laid down by the supreme court of the United States, in *Swift* v. *Tyson, 16 Pet. 1,* that one who takes a promissory note before maturity, for a pre-existing debt, is a holder for value.

Chancellor Zabriskie, also, in *Uhler* v. *Semple, 5 C. E. Gr. 288,* said that the rule that a prior debt is not sufficient to make one a *bona fide* purchaser or mortgagee for value has never been adopted in New Jersey. "Our courts," said he, "have uniformly held that it is a sufficient consideration to protect one holding the legal right, against the prior equity of one who has not legal right, when the other had no notice of such equity." He cites *Allaire* v. *Hartshorne, supra,* as his authority for this statement.

But, as was pointed out by Vice-Chancellor Pitney in his opinion in the case of *Milton* v. *Boyd, 4 Dick. Ch. Rep. 142, 149,* the rule enunciated in the case of *Allaire* v. *Hartshorne* was in respect to negotiable paper, and was admittedly a rule grounded upon the requirements of the business world, in respect to the transference of such securities. Indeed, Chancellor Zabriskie himself, in a subsequent case of *Mingus* v. *Condit, 8 C. E. Gr. 313,* in holding that a grantee or mortgagee for a pre-existing debt was not a holder for value, recognized the distinction which Chief-Justice Green drew in *Allaire* v. *Hartshorne* between the passing of negotiable commercial paper and the transfer of ordinary property, without parting with anything for value.

In *Butterfield* y. *Okie, 9 Stew. Eq. 482,* the language employed by Chancellor Zabriskie in *Uhler* v. *Semple* was, it is true, reiterated, but only as the language of a judge, in the same court, in an unreversed case.

The case of *First National Bank* v. *Cummins, 12 Stew. Eq. 577,* merely asserts the right of an insolvent debtor to prefer a creditor, and, in the opinion in that case, *Mingus* v. *Condit, supra,* is criticised as deciding a principle that was not involved in the case—it really involving the right of an insolvent creditor to prefer a creditor.

In *Knowles Loom Works* v. *Vacher, 28 Vr. 490,* it was held that, within the meaning of the act which made every unrecorded conditional sale of chattels void against subsequent purchasers and mortgagees in good faith, a subsequent chattel mortgage given for a pre-existing debt to one without notice of a conditional sale held the prior right. It was held that the meaning of the words *"bona fide,"* as used in the statute, excluded the idea that a purchaser or mortgagee must also hold "for value."

In this opinion Mr. Justice Van Syckel drew a distinction between this statute, from which the words "for value" are absent, and the statute concerning real estate mortgages, in which unrecorded deeds and mortgages are void against subsequent mortgages and deeds made in good faith, and also for valuable consideration.

In *Pancoast* v. *Duval, 11 C. E. Gr. 445,* it was held that an unrecorded mortgage was not void against a subsequent mortgage given in payment of a pre-existing debt, the reason being that the latter mortgage was not made for a valuable consideration. In *De Witt* v. *Van Sickel, 2 Stew. Eq. 209,* Vice-Chancellor Van Fleet refused to accord to the assignee of a mortgage assigned in consideration of a precedent debt the character of a holder for value. The mortgages assigned had been made as part of a scheme to defraud creditors. The equity of the creditors to set it aside being a secret one, the mortgage would have been good in the hands of a *bona fide* assignee *for value.* The case directly involved the question whether the assignee of a mortgage for a pre-existing debt takes it free from latent equities outstanding in third parties, and the question was answered in the negative.

I am of the opinion that, upon the payment of the amount due upon the $3,000 note, the trust company should deliver the mortgage to Tate.