OSWALD SCHMIDT ET AL., DEFENDANTS IN ERROR, v. RANDOLPH PERKINS ET AL., PLAINTIFFS IN ERROR.

Argued March 14, 1907—Decided June 17, 1907.

1. The title to tangible personal property belonging to an Iowa corporation, but actually stored in New Jersey and not merely *in transitu*, is to be determined by the law of New Jersey, as between residents of Iowa and residents of states other than Iowa.
2. A sale of tangible personal property actually stored in New Jersey by an insolvent Iowa corporation to four creditors, one of whom is a director, in satisfaction of an antecedent debt, is invalid as against attaching creditors resident in states other than Iowa, where all the vendees have knowledge of the facts.

On error to the Hudson Circuit.

For the plaintiffs in error, *George G. Tennant.*

For the defendants in error, *Maximilian T. Rosenberg.*

The opinion of the court was delivered by

SWAYZE, J.  This is an action of replevin involving the title to certain engines, formerly the property of the Whitehead Machinery Company, an Iowa corporation.  The plaintiffs claim under a sale made to them in Iowa on October 4th, 1905.  The defendants, under an attachment out of the Hudson Circuit levied at Jersey City October 7th, 1905.  The plaintiffs are residents of Iowa.  The residence of the plaintiff in attachment is not shown, but seems to have been in Illinois, and the applying creditor is a resident of that state. The actual *situs* of the engines, from the time they were bought by the Whitehead Machinery Company early in 1904 to the date of the attachment, more than a year and a half, was in Jersey City, where they were in the custody of the Pennsylvania railroad.  They had been bought by the Whitehead company, which dealt in second-hand machinery, for purpose of resale, and the evident intent was to leave them

in Jersey City until they were actually sold. Notice of the sale to the plaintiffs was immediately given to the Pennsylvania Railroad Company. The sale was for the purpose of satisfying a note of the Whitehead company dated November 1st, 1904, payable one year after date and endorsed by the plaintiffs. This note was held by an Iowa bank, and was paid by the plaintiffs October 4th, 1905, the day of the sale to them. One of the plaintiffs was a director of the Whitehead company at the time. One had been, but had resigned some time before, and two had acted as directors upon the supposition that five were required, but had discovered previous to October 4th that only three were authorized. All, however, took part in the transaction.

At the trial the solution of the question at issue was treated by counsel on both sides as dependent upon the law of Iowa as to transfers of property of an insolvent corporation to its directors, and evidence was taken on that subject by the plaintiffs and defendants. The trial judge directed a verdict for the plaintiffs, to which exception was duly taken. At the argument in this court it was for the first time suggested that the title was governed by the law of New Jersey, and counsel were allowed to submit supplemental briefs.

We think the case was tried by counsel upon an erroneous theory. The title to tangible personal property is ordinarily governed by the law of its *situs.* The maxim *mobilia personam sequuntur* states a mere fiction of law, which it is sometimes necessary to apply in order to do justice, but it ought not to be extended beyond that necessity. Our Supreme Court long ago recognized the absurdity of affirming that goods found within the jurisdiction of the state are not subject to its laws (*Varnum* v. *Camp,* 1 *Gr.* 326), and more than fifty years later, in *Cronan* v. *Fox,* 21 *Vroom* 417, this court said: "The rule that the title to movable property is to be judged of and determined by the *lex rei sitæ* (which is not without exceptions) has prominent application and adoption where personal property is seized under process issued from the courts of the state where the property is." The learned judge

who wrote the opinion in that case did not state the exceptions to which he referred. He may have had in mind cases of choses in action, sometimes classed as movables and subject to the maxim above quoted (*Moore* v. *Bonnell,* 2 *Vroom* 90) ; cases where both claimants have the same domicile (*Runyon* v. *Groshon,* 1 *Beas.* 86; *Northwestern Bank* v. *Poynter* (1895), *A. C.* 56) ; cases where the conveyance is itself sufficient to pass title, and the only invalidity arises out of the proposed method of distributing the proceeds, and the objection is made by creditors not resident in New Jersey (*Bentley* v. *Whittemore,* 4 *C. E. Gr.* 462), or cases where the goods are merely *in transitu* (*Sav. Int. Law, Eng. trans.,* 135), of which rule *Knowles Loom Works* v. *Vacher,* 28 *Vroom* 490; *affirmed,* 30 *Id.* 586, seems the nearest illustration in our reports. We have recently reviewed the cases in *Cooper* v. *Philadelphia Worsted Co.,* 2 *Robb.* 622. None of the exceptions are applicable to the present case. The cases of an assignment with preferences and of goods *in transitu* are most like it. The latter exception is not in point since the goods were stored in Jersey City for more than a year and a half, and without any present intent of removal unless in the event of a resale. The former exception, which was the case of Bentley *v.* Whittemore, is not in point since in that case the conveyance itself was sufficient under our law. It was only the method of distribution to which the conveyance was ancillary that militated with the provisions of our statute. It was therefore quite possible to sustain the conveyance in that case and disregard the prôvision for a preference among creditors in the distribution. In the present case it is the conveyance itself which is voidable by creditors, for reasons to be stated hereafter. The court took pains to point out, in Bentley *v.* Whittemore, the distinction between a defect in the conveyance itself and a defect in the scheme to which the conveyance was ancillary. Such a distinction was quite essential to the decision of that case since the title to land came in question. The court said: "No doubt is intended to be hinted as to the settled existence of the rule that the validity of every

disposition of real estate must depend upon the law of the country in which that estate is situated."

Cronan *v.* Fox was decided twenty years after Bentley *v.* Whittemore, and in our judgment enunciates the rule that must govern the present controversy. This case is indeed the converse of that. There the conveyance was invalid in Maryland, but valid in New Jersey. Here the conveyance is said to be valid in Iowa, but invalid in New Jersey. In that case we protected the grantee against the process of our own courts. If there is any difference it is in favor of sustaining a seizure under the process of our courts, as we are now asked to do. One of the attaching creditors, and probably both, are not residents of Iowa, and hence are not to be held as bound by the law of that state. We therefore see no difficulty in the way of holding that the title to the goods is to be determined by the law of New Jersey.

The law of this state, independent of section 64 of the Corporation act (*Pamph. L.* 1896, *p.* 298) is that directors of an insolvent corporation are trustees of its funds for its creditors, and subject to the rule that a trustee cannot use property for his own benefit to the disadvantage of the *cestui que trust.* It follows that directors who are creditors stand upon the same footing as any other creditor, and cannot by any act of their own obtain a position superior to that of other creditors for whose benefit they hold the trust assets. This wholesome doctrine was established at a time when our statute did not contain the provisions now embodied in section 64. *Montgomery* v. *Phillips,* 8 *Dick. Ch. Rep.* 203 (at *p.* 217). The rule applies only to directors. *Savage* v. *Miller,* 11 *Id.* 432. The facts of this case suggest the query whether the same rule would be applicable to directors who are such only *de facto,* but it is not necessary to decide this question. One of the four to whom the engines were sold was actually a director. All seem to have taken part in the transaction, and to have known of what our law deems a breach of trust. If so, they can no more profit thereby than the director himself.

A conveyance of property held in trust by which a trustee

attempts to secure an advantage for himself as against his *cestui que trust* is voidable by the *cestui que trust*. *Staats* v. *Bergen*, 2 *C. E. Gr.* 554, 558; *Romaine* v. *Hendrickson's Executors*, 12 *Id.* 162; *affirmed*, 1 *Stew. Eq.* 275; *Bassett* v. *Shoemaker*, 1 *Dick. Ch. Rep.* 538. The question usually arises in equity, but there is no reason why the sale should not, like other fraudulent sales of personal property, be avoided at law. In this case the attaching creditors occupy the position of *cestuis que trustent* and the plaintiffs the position of trustees or vendees with notice. The attachment was in itself an election to avoid the sale.

The rule of Montgomery *v.* Phillips applies only to insolvent corporations, and unless there was evidence of insolvency on October 4th, 1905, the direction of verdict for the plaintiffs was correct. We think there was persuasive evidence of insolvency within the meaning of the word in our law. *National Bank of the Metropolis* v. *Sprague*, 6 *C. E. Gr.* 530, 538; *Skirm* v. *Eastern Rubber Manufacturing Co.*, 12 *Dick. Ch. Rep.* 179, 184. It is unnecessary to recite the evidence which leads us to this view, since the question is one of fact, which must be determined by a jury.

The judgment must be reversed, and the record remitted for a new trial.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 15.