In re HAMMOND. *

No. 347.

Circuit Court of Appeals, Second Circuit.

July 25, 1938.

*Writ of certiorari denied 59 S.Ct. 149, 83 L.Ed. —.

Ernst, Gale, Bernays & Falk, of New York City (Murray C. Bernays and Abraham Friedman, both of New York City, of counsel), for appellant.

Sapinsley & Lukas, of New York City (Simon H. Rifkind, Alvin. T. Sapinsley, and Edwin J. Lukas, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Upon his voluntary petition Harris Hammond was adjudicated a bankrupt on September 30, 1937. Thereafter, pursuant to section 11a of the Bankruptcy Act, 11 U.S.C.A. § 29(a), he moved for an order to restrain a judgment creditor, Irving Trust Company as trustee in bankruptcy of Sonora Products Corporation of America (formerly known as Acoustic Products Company), from taking any further steps, except in the pending bankruptcy proceedings, to collect a judgment of $1,938,755 entered against him prior to bankruptcy. The district court granted the requested stay, pending the bankrupt's application for a discharge, and by leave of this court the creditor has appealed.

The sole question for decision is whether the appellant's judgment, concededly a provable debt, represents a liability that is excepted from discharge under section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35, the relevant provisions of which read as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (second) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, * * * or (fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity * * *."

To determine the character of the liability upon which the appellant's judgment was founded, we must look to the suit in which it was rendered. In re Harber, 2 Cir., 9 F.2d 551. It was a suit in equity to compel the defendants to account for profits alleged to have been made in violation of their fiduciary duties to a corporation (for convenience referred to as Acoustic) of which several of the defendants, including Hammond, were directors. The District Court dismissed the bill on the merits, with an opinion reported as Irving Trust Co. v. Deutsch, 2 F.Supp. 971. This court reversed that decree with respect to Hammond and three other defendants. Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121. A very brief recapitulation of the facts will suffice to indicate the character of the liability decreed against them.

Acoustic obtained an offer from Reynolds & Co. of a one-third participation in the purchase of 600,000 shares of De Forest stock. At a meeting of the board of directors, the president of Acoustic reported his inability to procure the necessary funds, $100,000, to enable Acoustic to carry out its obligations, if it should accept the offer; and he announced that several individuals were desirous of taking over the proposal on their own behalf and were willing to extend to Acoustic the benefits contemplated by the acquisition of the stock. The contemplated benefits were access to patents controlled by the De Forest Company. Thereupon the directors voted to accept the offer on behalf of Acoustic and to notify Reynolds & Co. of its acceptance. When the time came for payment for the stock, Acoustic lacking the funds, several of its directors and others associated with them, made the payments and took the stock in their own names. An active market on the Curb Exchange was created for De Forest stock, and Hammond and his associates made large profits through the sale of their shares. This court imposed liability on the directors, Biddle, Deutsch and Hammond, upon the principle that a fiduciary may make no profit for himself out of a violation of duty to his cestui, even though he risk his own funds in the venture; that the rigid rule of "undivided loyalty" forbids directors of a solvent corporation "to take over for their own profit a corporate contract on the plea of the corporation's financial inability to perform." The defendant Bell, who was not a director, was held liable on the principle that "one who knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the profits of the enterprise." No conscious purpose to defraud Acoustic was found by the district court or by this court; nor was the liability decreed by this court upon Hammond and his associates predicated upon conscious wrongdoing. Pursuant to the decision and mandate of this court, the district court entered an inter-

locutory decree against the four defendants above named, adjudging that their conduct in receiving and dealing with the De Forest stock was "an unlawful taking and disposition by said defendants of property and property rights" of Acoustic, and ordering them to account jointly and severally to the present appellant for said stock and all profits derived therefrom. Thereafter an accounting was had, and a final judgment was entered, which was affirmed by this court without opinion. Irving Trust Co. v. Deutsch, 2 Cir., 87 F.2d 1008. This is the judgment now under consideration.

[1] The appellant contends that its judgment is excepted from a discharge both under the second subdivision of section 17, 11 U.S.C.A. § 35, subd. 2, as a liability for "willful and malicious injuries" to the property of another; and also under the fourth subdivision, 11 U.S.C.A. § 35, subd. 4, as a liability created by the bankrupt's "fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." It would seem that Hammond did not commit a "wilful and malicious" injury to property. See Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393. But we need not so decide, since we are of opinion that the fourth subdivision applies.

The liability upon which the judgment is based is obviously one created while Hammond was acting as an officer or in a fiduciary capacity. The president of a private corporation has been held to be an "officer" or a fiduciary within the meaning of the clause under discussion. In re Bernard, 2 Cir., 87 F.2d 705; Bloemecke v. Applegate, 3 Cir., 271 F. 595. It can scarcely be doubted, and is not, we understand, disputed, that a director falls within the same category. Whether Hammond's liability was created by "fraud" within the meaning of the fourth subdivision of section 17 is a question much disputed by the parties; but this also need not be decided because in any event it was created by his "misappropriation" while acting as an officer or in a fiduciary capacity. As the interlocutory decree adjudged, the conduct of Hammond and his associates was an "unlawful taking and disposition" of Acoustic's property and property rights. Whether the property so taken be deemed the corporate contract, or the stock covered by the contract, or the proceeds of the sale of such stock, it was a res held in trust for the corporation by a person who was already a fiduciary; for

the fiduciary to claim it as his own was a "misappropriation" within the ordinary meaning of that word. But the bankrupt argues that the association of the word with fraud, embezzlement and defalcation implies, under the familiar ejusdem generis rule of construction, that some evil intent must accompany the bankrupt's misappropriation; that Hammond was animated by a desire to obtain for Acoustic the benefit of access to the necessary patents, and had no intention of despoiling his cestui. Implicit in this argument is the assumption that Hammond did not know, and is not chargeable with knowing, the rule of law forbidding him to take over for his own profit a contract of a solvent corporation, even when the corporation is financially unable to perform it. But this assumption is unwarranted; he is chargeable with knowledge of the law. The character of the liability imposed upon a fiduciary for appropriating property of his cestui in violation of his duty is the same whether he has actual knowledge that the law imposes the duty or is merely charged with such knowledge. In either event the appropriation is intentional and, since it is unlawful, it is such a "misappropriation" as, in our opinion, excepts the liability from release by a discharge in bankruptcy. See Stickney, Adm'r, v. Parmenter, 74 Vt. 58, 61, 52 A. 73.

It is true that in Re Bernard, 2 Cir., 87 F.2d 705, at page 707, this court said that "the misappropriation must be due to a known breach of duty, and not to mere negligence or mistake." But the mistake there referred to must be one as to a fact, not as to a rule of law with knowledge of which the bankrupt is chargeable. That was a case where the bankrupt, the president of an insolvent corporation, appropriated part of its assets to pay debts owing to himself and his son, who was likewise an officer. In making such payments he acted in violation of section 15 of the New York Stock Corporation Law, Consol.Laws, c. 59, and contrary to his obligations as a fiduciary. A judgment recovered against him by the assignee of the corporation was held to be non-dischargeable in bankruptcy. We held that the bankrupt had knowingly committed a breach of duty as a fiduciary, which was a "misappropriation" within section 17. We said that he was chargeable with knowledge that the corporation was insolvent, and we assumed that he was chargeable with knowledge of the law

which forbade the preferential payments, although nothing was said as to such knowledge. In Central Hanover Bank & Trust Co. v. Herbst, 2 Cir., 93 F.2d 510, 114 A.L.R. 769, this court assumed arguendo that "defalcation" demands some measure of misconduct, and found it to exist by charging the bankrupt with knowledge of the legal principle that an order awarding him a fee would not protect him if reversed. These decisions, we think, control the case at bar. None of the authorities relied upon by the appellee is sufficiently closely in point to require discussion.

Order reversed.