In the Matter of Edward S. STEVENS, Bankrupt.

Leonard S. SINGER, As Receiver for Heat Recovery Corporation, Plaintiff-Appellee,

v.

Edward S. STEVENS, Defendant-Appellant.

No. B–78–576.

United States District Court, D. New Jersey.

Aug. 16, 1979.

Kleinberg, Moroney, Masterson & Schachter, Millburn, N. J., for defendant-appellant.

Miller & Platt, Paterson, N. J., for plaintiff-appellee.

OPINION

LACEY, District Judge.

The bankrupt, Edward S. Stevens [Stevens], appeals from a determination of the bankruptcy court that his debt of $6,648, founded upon a state court judgment, and owed to the receiver, was nondischargeable under § 17a(4) of the Bankruptcy Act [Act], 11 U.S.C. § 35a(4), which, in pertinent part, provides:

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity . . . .

*Id.*

The bankruptcy court found the underlying debt was created by Stevens' "misappropriation."

The facts are largely undisputed and the record in the bankruptcy court was made by stipulation, without oral testimony.

The plaintiff, state-court appointed receiver for Heat Recovery Corporation [HRC], charged below that the aforementioned sum of $6,648 was due and owing to him from Stevens and sought to have the debt declared nondischargeable. Stevens had previously filed a petition in bankruptcy.

Well before 1977, and at all critical times, Stevens was president of HRC and owned 49% of that company's stock.

In June 1977 the receiver, through counsel, and pursuant to the powers granted him by the state court, conducted a hearing at which Stevens testified. Subsequently, the receiver proceeded in state court to recover from Stevens the sum of $7,648 which, the receiver alleged, had been improperly taken from HRC. On March 10, 1978, the dispute was settled and judgment was entered against Stevens, upon his consent, in the sum of $6,648. Stevens, having now filed his bankruptcy petition, contends that judgment debt is dischargeable. The receiver, of course, contends otherwise.

The total amount of the consent judgment comprises two separate sums and transactions:

1. An HRC check, No. 388, signed by Stevens for the company, dated April 7, 1977, for $2,348, drawn to the order of cash, which Stevens then cashed on April 7, retaining the proceeds for his own use on a claim that this represented his salary for the month of April 1977;

2. An HRC check, No. 398, signed by Stevens for the company, dated April 12, 1977, for $4,300, drawn to the order of cash, which Stevens then cashed on April 13, retaining the proceeds for his own use on a claim that the sum represented partial payment of vacation pay due and owing him over the preceding four years.

These checks were procured by Stevens at a time when HRC's financial picture was grim. As the bankruptcy court quite properly found:

> In April 1977 Heat Recovery Corporation was indebted to the First National State Bank of New Jersey in the sum of $495,000. The indebtedness arose out of certain ninety day notes which had been renewed every ninety days since they were executed in early 1976. No payments on the indebtedness were ever made.

> For the previous two years Heat Recovery Corporation had been operating at a deficit. During the last eight months of 1976 it showed losses of $88,340 and, as of the end of 1976, showed a capital deficit of approximately $170,000. It was unable to pay its U.S. Internal Revenue taxes due for the last quarter of 1976,

which nonpayment had prompted a visit from federal internal revenue officials in 1977.

For some time previous, the First National State Bank of New Jersey had expressed concern over the status of its account. As a result of its dissatisfaction with the nonpayment of its loan, on April 12, 1977 three officials of the bank, accompanied by two members from the law firm which represented it, appeared at the offices of Heat Recovery Corporation. They advised the bankrupt that, pursuant to the financing agreement, they were calling in their loan and were taking possession of the funds and receivables of the company. They suggested to the bankrupt that he might want to advise the company employees that they would be terminated, as there would be no funds available to meet the payroll.

Opinion, 2.

On this appeal the bankrupt does not contest the finding of the bankruptcy court that the bankrupt, at the time he received and cashed the two checks (nos. 388 and 398) had "knowledge of the insolvent condition of the company and . . . actual knowledge of the takeover of assets of the company by the . . . [bank]." Opinion, 4. *See* Appellant's Brief, 4.

As he did in the bankruptcy court, Stevens here urges the following:

I. The state court judgment is *res judicata*, can be treated merely as a judgment debt, and a bankruptcy court cannot reexamine the underlying facts to determine whether nondischargeability factors are present.

II. When Stevens took the two checks in question, he was not a "fiduciary" within the statutory meaning.

III. His taking and cashing the checks was not a "misappropriation" under the Act.

---

1. Presumably, he is claiming either that he was entitled to be paid double when he did not take a vacation or that while on vacation in previous years he had not been paid in full, or both.

---

**I.**

■ The bankruptcy court properly looked behind the judgment. Principles of res judicata and collateral estoppel are inapplicable to the issues tendered by Stevens under the circumstances of this case. *Brown v. Felsen*, —— U.S. ——, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *cf. Matter of Ross*, 602 F.2d 604, 605–608 (3d Cir. 1979). For the same reasons, Stevens' claims founded upon estoppel and waiver (Appellant's Brief, Point II, 12–17) are rejected.

**II.**

■ Stevens at the times the checks issued was acting as an officer or fiduciary of HRC, within the statutory meaning of those terms. *In re Bernard*, 87 F.2d 705 (2d Cir. 1937).

**III.**

■ I turn to the finding of the bankruptcy court, that Stevens "deliberately misappropriated" the sum of $6,648 from HRC, a finding critical to nondischargeability under 11 U.S.C. § 35a(4).

Stevens contends that there can be no "misappropriation," under New Jersey law, by an officer, irrespective of the fact of his company's insolvency and his knowledge thereof, if he takes from the company money due and owing to him as salary or wages, and all other officers and employees are treated similarly. *See* N.J.S.A. 14A:14–14. Stevens argues that his testimony at the state court hearing–that the checks were for money due and owing him for his April 1977 salary and past vacations,[1]–was uncontradicted, and that, in fact, the bankruptcy court had accepted and credited this testimony. Appellant's Brief, 4.

The record discloses that Stevens' annual salary in April 1977 was $39,000, payable in equal monthly installments of $3,250, and that he and the other employees were paid up to the plant's closing on April 12, 1977 (App.Ex. C, 19–20); that the company plant

---

App. Ex. C, 27: "That amount is in lieu of a partial payment over a period of four years, which I either never took or only partially taken [*sic*]."

was closed because the bank "called in the loan and there were no funds for salaries and payroll" (*id.*); that while Stevens ceased to work for HRC on April 12, 1977, he visited the premises "repeatedly" over the following two weeks under employment by the bank which paid him $1,500 (App.Ex. D, 19); and that executive officers were paid once a month, on the fifteenth of each month (*id.*, 25–26).

Stevens, aside from the general explanation I have alluded to, did not submit any arithmetical calculation to support the amounts of the two checks. Thus, for example, after claiming that the April 7 check he drew for $2,348 was for his April salary, he testified that his monthly salary, regularly paid on the fifteenth of the month, was $3,250. He did nothing to explain the inherent contradictions. Indeed, to this day no explanation has been offered. Moreover, it must be remembered that he worked only until April 12, in any event. It would not be unreasonable to conclude that the sum withdrawn from the company was not in fact for salary.

As to the alleged "vacation" debt due and owing, this claim too was not supported by any evidence other than Stevens' bald assertion, advanced without any calculation or analysis, and suffering from the unlikely coincidence that the check was written by Stevens on the day the bank closed down the plant. Again, one could reasonably conclude that the "vacation" explanation should be rejected.

It appears from the opinion of the bankruptcy court, and the briefs submitted in that court, that Stevens there took the position that he was not guilty of "misappropriation" since all he had done was take from the company wages due him. *See* Stevens' Brief in Bankruptcy Court, 10. The receiver did not challenge the claimed bases for issuance of the checks. Instead, he simply argued that it was a "misappropriation" because Stevens, acting as an officer, had drawn the checks and taken the proceeds knowing the company was insolvent and that the interests of other creditors would be sacrificed. Receiver's Brief in Bankrupt-

cy Court, 18. The bankruptcy court, commenting upon the two checks, stated:

On the very same day, April 12, 1977, the bankrupt drew, or had drawn, Heat Recovery Corporation check numbered 398 in the amount of $4,300.00 payable to the order of cash. The next day the bankrupt cashed the check and kept the proceeds thereof for himself. He contends that the $4,300.00 represented partial payment of vacation pay due and owing him for the past four years.

Previously, on April 7, 1977, the bankrupt caused Heat Recovery Corporation check numbered 388, dated April 7, 1977, in the amount of $2,348.00 to be drawn payable to the order of cash. The bankrupt cashed the check the next day and kept the proceeds for his personal use. He contends that the $2,348.00 represented his salary for the month of April 1977.

In considering the explanation offered by the bankrupt that he considered himself as just another employee and, since all employees were paid the wages due and owing them, there was no preference or intent to act improperly in paying himself, we note that both checks were made payable to the order of "cash". It is also noted that the company policy had been to pay officers' salaries in the middle of the month.

As to the $4,300.00 check which allegedly represented vacation pay due and owing for the previous four years, no indication is given that the other employees were treated in the same manner. Opinion, 2–3.

Nonetheless, while the bankruptcy court had expressed its skepticism about Stevens' explanations for the checks, it did not make a finding that they were rejected as unworthy of belief. Instead it stated:

It is the opinion of this Court that the bankrupt, by drawing the checks numbered 388 in the amount of $2,348.00 and 398 in the amount of $4,300.00, having knowledge of the insolvent condition of the company and having actual knowledge of the takeover of assets of the company by the First National State

Bank of New Jersey, as an officer and fiduciary under § 17a[4], deliberately misappropriated the sum of $6,648.00 and, therefore, such debt is nondischargeable under the provisions of § 17a[4] of the Bankruptcy Act.

Opinion, 4–5.

Stevens in this court contends that the bankruptcy court erred in holding the wage and vacation payments to be a "misappropriation." He asserts that all other executives and employees had been paid in full (along with Stevens), and that there was therefore no preference or intent on his part to act improperly in paying himself. Appellant's Brief, 4.[2] He then advances the argument that "[t]he only basis for the Court's finding below of non-dischargeability, is that the debt in question was 'preferential' and that such a preferential transfer by an officer, stockholder and director constitutes a violation of Sec. 17a(4)." *See id*, 11, 12, and 17–20.

Having thus established his own "preference" basis for the bankruptcy court's decision, and after conceding that the authorities cited by the bankruptcy court support its determination "that where a company is insolvent and the principal officer, stockholder and director, with knowledge of that insolvency, prefers a debt by repaying himself, that such actions do constitute a violation of the provisions of Sec 17a(4) . . . ." (Appellant's Brief, 17–18), Stevens is critical of the decision below because "what is not clear is that the Trial Court, in citing the cases in support of this proposition, did not indicate whether or not it was adopting the viewpoint that the preferential payment would have to violate the New Jersey Corporation Act." *Id.*, 18.

In the state court the receiver alleged that on April 7, 1977, and April 12, 1977, the respondent, Edward S. Stevens, transferred to himself the sums of $2,348 and $4,300 respectively. The word "misappropriation"

nowhere appears in the record of the state court proceedings, and, of course, the state court judgment omits any mention of the receiver's theory of recovery. Thus, the bankruptcy court had to apply its understanding of "misappropriation" to the facts as developed in the state proceeding.

Yet the bankruptcy court did not state why it deemed what Stevens did to be a "misappropriation" under Section 17a(4). As has been noted, it expressed skepticism about his explanation for drawing the checks, but it did not reject these explanations as untruthful.[3] Under these circumstances, one would have to infer that the bankruptcy court found a "misappropriation" simply from the drawing of the checks by an "officer" with knowledge of insolvency.

The meaning of "misappropriation" as intended in the Act is far from clear. *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, (2d Cir. 1937), decided the same year as *In re Bernard*, 87 F.2d 705 (2d Cir. 1937), a case relied upon by the bankruptcy court, found "misappropriation" to be "a baffling word at best in this context [which] may have been put in to avoid traditional limitations clinging to the word 'embezzlement.'" 93 F.2d at 512.

Judge Learned Hand, in *Herbst*, also stated that the word "misappropriation" "probably carries a larger implication of wrongdoing than 'defalcation.'" *Id.*

The word "fraud" in the Act has been interpreted by the Supreme Court in *Neal v. Clark*, 95 U.S. 704, 708–09, 24 L.Ed. 586 (1878), the Court there holding it should receive "the same construction" as embezzlement and means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong as does embezzlement, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality."

---

2. Appellant is incorrect in his assert bankruptcy court so found in its Opinion, at page 3. There is, moreover, nothing in the record to indicate the other executives and employees were treated similarly with respect to vacation pay.

3. Indeed, it is doubtful it could do so on the basis of the cold record and without hearing and observing Stevens testify "live."

On a Richter scale of improper conduct under Section 17a(4), it would seem that "misappropriation" stands between "fraud" and "embezzlement" at the evil end and "defalcation" at the opposite end.

To say simply that a corporate officer writing checks to himself constitutes "misappropriation" under Section 17a(4) is not enough; and this court is unclear as to the basis for the holding of the bankruptcy court.

In relying upon *Bernard, supra*, and *In re Hammond*, 98 F.2d 703 (2d Cir. 1938), the bankruptcy court invoked the two most frequently cited decisions dealing with "misappropriation" under the Act.

*In re Bernard* involved a corporate officer who, knowing of his corporation's insolvency, received from the corporation payments in liquidation of his own claims and those of his son. The court found the payments preferential at the expense of other creditors and the corporation, while the officer was acting as a fiduciary. These payments, which the court also found violative of the Stock Corporation Law and the common law, were held to constitute a "misappropriation" under Section 17a(4), barring discharge in bankruptcy of the debts thereby created.

In *Hammond, supra*, the court noted that, to determine the nature of the judgment debt there involved, it was necessary to look to the suit in which it was rendered, as did the bankruptcy court below. The *Hammond* court, having conducted such examination, found that the bankrupt's debt was founded upon his having taken over for his own profit a corporate contract while acting as a director. The contract (or stock covered by it) was, the court held, "a *res* held in trust by a person who was already a fiduciary; for the fiduciary to claim it as his own was a 'misappropriation' within the ordinary meaning of that word." *Id.* 705.

In each case there was an analysis why the taking was a "misappropriation" that is lacking here.

The appellant contends there are lacking in the opinion below an analysis and findings related to why the issuance of the checks constitutes a "misappropriation." More particularly, appellant argues that bankruptcy court must have considered N.J. S.A. 14A:14–14 in reaching its decision. N.J. S.A. 14A:14–14 provides in part:

(1) For the purposes of this chapter, a preference arises when

(a) a corporation which, while insolvent, and within four months of the commencement of a receivership action by or against it, transfers any property to or for the benefit of a creditor for or on account of an antecedent debt; and

(b) the effect of such transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class; and

(c) the creditor receiving or to be benefited by the transfer . . . has, at the time when the transfer is made, reasonable cause to believe that the corporation is insolvent.

Subdivisions (1)(a) and (c) relate to no issue in dispute here. The transfers were within the prescribed four-month period, and Stevens had knowledge of HRC's insolvency at the time the checks issued.[4] It is with respect to subdivision (b) that analysis is required in light of the record.

Stevens, as has been stated, claims that all salary claimants were paid as he was. From this he seemingly contends there was no preference under subdivision (b). The opinion below not only did not expressly reject or accept this testimony, it failed to find whether there was a preference with respect to "other creditor[s] of the same class."

Assuming *arguendo* that Stevens is correct that the only means by which the bankruptcy court could have reached its decision was through application of N.J.S.A.

---

4. Actually, as to subdivision (a), on remand there may well be required an analysis of the "antecedent debt" requirement.

14A:14–14, the foregoing questions have to be answered, and remand therefore is appropriate. If the bankruptcy court relied upon some other breach of statute, or common law or equity provisions, such reliance should be set forth by the bankruptcy court with an analysis thereof.[5]

Accordingly, the matter will be remanded to the bankruptcy court pursuant to Rule 810 for further findings consistent with this opinion.

[5.] Under New Jersey law, when a corporation becomes insolvent, a quasi-trust relationship arises between the officers and directors on the one hand and the corporation's creditors on the other. *Portage Insulated Pipe Co. v. Costanzo,* 114 N.J.Super. 164, 275 A.2d 452 (App.Div. 1971). As a result, a duty arises whereby officers and directors cannot prefer one creditor over another, and they have a "special duty not to prefer themselves." *Id.* at 166, 275 A.2d at 453. *Accord, Rogosin v. City Trust Co. of Passaic,* 107 N.J.Eq. 79, 151 A. 834 (Ch.1930); *Schmidt v. Perkins,* 74 N.J.L. 785, 788, 67 A. 77 (E. & A. 1907). The cases which have applied this standard have dealt with the creation of statutory preferences. *But see Jessup v. Thomason,* 68 N.J.Eq. 443, 59 A. 226 (Ch.1904), directing that a wage claim be submitted "in the usual way" to the receiver, without specifying whether the preference claim was based on statute or otherwise.