609 F.2d 392
 Bankr. L. Rep. P 68,315
LAWRENCE T. LASAGNA, INC., Plaintiff-Appellant,
v.
Gary L. FOSTER dba Sno-White Drive-In, Inc., Defendant-Appellee.
LAWRENCE T. LASAGNA, INC., Plaintiff-Appellant,
v.
Gary L. SUTHERS, Defendant-Appellee.
LAWRENCE T. LASAGNA, INC., Plaintiff-Appellant,
v.
Donald Hoyt HALL aka Don Hall, Defendant-Appellee.
 No. 77-2664.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 7, 1979.
 
 1
 Fred H. Dill, Dill & Showler, Redlands, Cal., for plaintiff-appellant.
 
 
 2
 Robert J. Self, Young, Wooldridge, Paulden & Self, Bakersfield, Cal., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Eastern District of California.
 
 
 4
 Before DUNIWAY and ELY, Circuit Judges, and PORT*, District Judge.
 
 PORT, District Judge:
 
 5
 Plaintiff Lawrence T. Lasagna, Inc. (Lasagna) filed identical complaints in the separate bankruptcy proceedings of Gary L. Foster, Gary L. Suthers and Donald Hoyt Hall (bankrupts) seeking a determination of the nondischargeability of bankrupts' indebtedness to Lasagna pursuant to Sections 17(a)(4) and 17(a) (8) of the Bankruptcy Act, 11 U.S.C. §§ 35(a)(4) and 35(a)(8).[1] The bankruptcy judge granted a motion to dismiss the amended complaint in each proceeding upon its face pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The judgments were affirmed by the District Court for the Eastern District of California in a single judgment. We reverse and remand to the district court for further proceedings in each case.
 
 THE COMPLAINT
 The complaint alleges :
 
 6
 Lasagna on or about September 19, 1973 furnished machinery and equipment to Progressive Farming, Inc. (Progressive), a corporation wholly owned and controlled by the bankrupts and of which they were the sole officers and directors. As a result of the transaction Progressive became indebted to Lasagna in the sum of $24,365.17.
 
 
 7
 Lasagna sued Progressive and the bankrupts on this claim in Superior Court of the State of California, County of Tulare. Summary judgment was granted in Lasagna's favor against Progressive; judgment was granted against bankrupts after a bench trial in the sum of $24,365.17 with interest and costs. It is this indebtedness of bankrupts that Lasagna's complaints seek to have determined nondischargeable. The state court found that the bankrupts' personal liability to Lasagna arose out of bankrupts' conduct of Progressive's business: Bankrupts (1) misappropriated funds of the corporation, (2) fraudulently transferred corporate property to themselves when Progressive was insolvent, by various means described in the findings, (3) violated their fiduciary obligations to Lasagna as officers and directors of Progressive, (4) caused Progressive to be further insolvent, and (5) unreasonably depleted its capital. As a result of the manner in which the affairs of the corporation were conducted, the state court disregarded the corporate entity and treated the bankrupts as its alter ego.
 
 
 8
 The complaint alleged all the facts found by the state court judge. It alleged, in addition, other transfers to the bankrupts without consideration and in fraud of creditors. The findings, conclusions of law and judgment of the state court were attached to the complaint as exhibits and incorporated in it by reference.
 
 DISCUSSION
 Applicability of § 35(a)(8) :
 
 9
 The bankruptcy judge properly starts his analysis "by assuming (pursuant to a stipulation of the parties) the allegations in Plaintiff's complaint and said findings of fact (in the state court action) to be true." CR 54. The complaint alleges that the debt from the bankrupts to Lasagna, evidenced by the state court judgment, arose by reason of the willful and malicious injury to Lasagna's claim against Progressive, resulting from bankrupts' conduct. He then opines that section 17(a)(8), 11 U.S.C. § 35(a)(8), is inapplicable and requires no discussion. The district court affirmed the holding of inapplicability, basing its determination upon the ground that § 17(a)(8) requires an injury to specific "ear-marked" property of the creditor and that Lasagna's right to be paid by Progressive for goods sold to it would not constitute such property, a conclusion with which the dissent "thoroughly agree(s)." See p. 397 Infra.
 
 
 10
 The dissent says that "the congressional intent is plainly apparent on the face of the statute." The intent observed is "that the Character of the interest alleged to have been injured . . . determine(s) dischargeability." See, p. 397 Infra (emphasis added). Not only do we fail to discover such intent as "plainly apparent", but we find no evidence of such an intent. The plain language of the section is all inclusive with one exception not pertinent here. "(L)iabilities for willful and malicious injuries to the person or Property of another" are declared nondischargeable. 11 U.S.C.A. § 35(a)(8) (West Supp. 1979) (emphasis added).
 
 
 11
 The dissent recognizes that the interest of Lasagna would be considered property if the debt from Progressive to Lasagna "had been secured by specified collateral which had been converted." This is a distinction without a difference. Property "denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process." Gleason v. Thaw, 236 U.S. 558, 561, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). The debt or account receivable from Progressive to Lasagna and the resultant judgment are specified property which can be sold, pledged or levied upon as readily as an automobile or any other property. Section 17(a)(8), 11 U.S.C. § 35(a)(8), is derived virtually without change from § 17(a)(2) of the Bankruptcy Act of 1898. There is nothing to indicate that "property" as used in this section was intended by Congress to have the limited meaning asserted by the dissent.[2] See Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904); 1A W. Collier, Bankruptcy P 17.17(1), at 1653 (14th ed. 1978). For instance, nothing in the Act indicates that liability resulting from a willful and malicious injury to an automobile is not dischargeable pursuant to § 35(a)(8), while liability resulting from similar conduct toward an account receivable or other indebtedness will be discharged. As this Court has indicated, dischargeability under § 35(a)(8) is determined by a bankrupt's conduct rather than the character of the property injured:
 
 
 12
 The statutory exception which measures non-dischargeability is ". . . for liabilities . . . for willful or malicious injuries to the person or property of another. . . ." The exception is measured by the nature of the act, I. e., whether it was one which caused willful and malicious injuries. All liabilities resulting therefrom are non-dischargeable.
 
 
 13
 Coen v. Zick, 458 F.2d 326, 329 (9th Cir. 1972).
 
 
 14
 We recognize, as does our dissenting Brother that "exceptions to the operation of a discharge . . . should be confined to those plainly expressed." Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915) (legal services held not property within purview of provision "for obtaining property by false pretenses or false representations" under 1898 Bankruptcy Act as amended in 1903).[3] What we said in Paton v. England, 462 F.2d 1099, 1100 (9th Cir. 1972), is apt here:
 
 
 15
 However, be that as it may, the Court, over the years, has frequently pointed out that the Congressional solicitude is limited to, and the prophylactic benefit of a discharge is exclusively reserved for, "the honest and unfortunate debtor . . ." the purpose being to afford him "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of a pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). There can be no doubt of the power of Congress to discriminate between the worthy and the unworthy debtor with respect to the matter of discharge. Hanover Nat. Bank v. Moyses, 186 U.S. 181, 192, 22 S.Ct. 857, 46 L.Ed. 1113 (1902).
 
 
 16
 The Congress early recognized the distinction between the ordinary indebtedness and the wrongfully incurred indebtedness and between the honest and the dishonest debtor. This distinction is recorded in many instances during the congressional debates on the Bankruptcy Act of 1898. For instance:
 
 
 17
 A discharge will be granted unless it shall be made to appear, speaking in general terms, that the defendant has been guilty of some act of dishonesty or has been guilty of the perpetration of frauds with reference to his property.
 
 
 18
 Although a discharge in bankruptcy may be granted, still it will not operate as against taxes or judgments which have been rendered in actions for the commission of frauds or the willful or malicious injury to persons or property, . . . or such claims as were created by his wrongdoing while acting as an officer or in a fiduciary capacity.
 
 
 19
 31 Cong.Rec. 1786 (1898); See also id. at 1784, 1785, 1788, 1790, 1795, 1796, 1797-98.
 
 Applicability of § 35(a)(4) :
 
 20
 The bankruptcy court found § 35(a)(4) inapplicable because (1) the debt to Lasagna was not created by fraud or misappropriation but arose out of the machinery transaction with Progressive, and (2) no fiduciary relationship existed between Lasagna and bankrupts. This misconceives the nature of the debt or obligation: "To determine the character of the liability upon which the appellant's judgment was founded, we must look to the suit in which it was rendered." In re Hammond, 98 F.2d 703, 704 (2d Cir.) (citing In re Harber, 9 F.2d 551 (2d Cir. 1925)), Cert. denied, 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938). See Terzian v. California Casualty Indemnity Exchange, 42 Cal.App.3d 942, 946, 117 Cal.Rptr. 284, 287 (1974).
 
 
 21
 Although initially an indebtedness was created from Progressive to Lasagna, if the facts alleged are proven, the fraudulent conduct of the affairs of Progressive by bankrupts as officers and directors of Progressive having a fiduciary responsibility to the creditors of Progressive gave rise to an obligation and created an indebtedness to Lasagna resulting in the Superior Court judgment. But for the bankrupts' fraudulent conduct, there would have been no debt due from bankrupts; Progressive would be the only debtor. In re Metz, 6 F.2d 962 (2d Cir. 1925); Ivy v. Plyler, 246 Cal.App.2d 678, 54 Cal.Rptr. 894 (1966) (judgment rendered against bankrupt officer of insolvent corporation under doctrine of Alter ego held nondischargeable); In re Petersen, 25 F.Supp. 411 (E.D.N.Y.1938); John P. Maguire & Co., Inc. v. Herzog, 421 F.2d 419 (5th Cir. 1970); In re Bernard, 87 F.2d 705 (2d Cir. 1937).
 
 
 22
 Both the bankruptcy judge and the district judge placed some emphasis upon the fact that in the state court action, that court concluded that the three bankrupts were the alter ego of Progressive. The notion seems to be that this made them liable on the original indebtedness of Progressive as part of a single fictitious unit composed of Progressive and the three individual bankrupts. The phrase "alter ego" will not bear such a load. It is a convenient bit of shorthand for various types of cases in which officers or directors or stockholders or all three are held to be liable for the obligations of their corporation. The reality, however, is as we have stated. The bankrupts were not originally liable on Progressive's debt. Their conduct, as described in the complaints and as found by the state court, created a new liability on their part directly to Lasagna.
 
 
 23
 The short answer to the lack of fiduciary relationship is finding of fact No. 8 in the state court action, made part of the complaint, that "the responsibility of the individual defendants (bankrupts) was then that of a fiduciary to Plaintiff as a creditor of the corporation." CR 11. See generally Pepper v. Litton, 308 U.S. 295, 306-307, 60 S.Ct. 238, 84 L.Ed. 281 (1939); In re Petersen, 25 F.Supp. 411 (E.D.N.Y.1938); Commons v. Schine, 35 Cal.App.3d 141, 110 Cal.Rptr. 606 (1973).
 
 
 24
 Appellee's contention that Lasagna lacks standing to bring the present proceeding can be dismissed summarily by reference to 11 U.S.C. § 35(c)(1): "The bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debt."
 
 
 25
 Appellee's contention that the holding in United States Fidelity and Guaranty Co. v. Tanner, 279 F.Supp. 396 (D.Colo.1968) supports a suit by Progressive but bars suit by Lasagna does not hold up under examination. There, the court merely found that the plaintiff surety company could not exclude its claim from Tanner's discharge in bankruptcy under the wilful and malicious conversion provision because it failed to sustain its burden of proof. It further found:
 
 
 26
 (T)he debt owed by Tanner to the Plaintiff did not arise as a result of a breach of any fiduciary duty as an officer or otherwise owed by Tanner to the Plaintiff.
 
 
 27
 The debt here in question Arose by virtue of an indemnity agreement executed by Tanner in his individual capacity to indemnify Plaintiff from any loss it might suffer on Bonds issued to the United States by Tanner, Inc. as principal and the Plaintiff as surety.
 
 
 28
 279 F.Supp. at 400 (emphasis added). There was no need for the court to reach the question raised by appellee.
 
 Effect of the State Court Judgment :
 
 29
 The judgment of the state court is not conclusive. As we said in In re Houtman, 568 F.2d 651 (9th Cir. 1978), after the 1970 Amendments, the doctrine of collateral estoppel may not be applied in determining dischargeability of debt evidenced by state court judgments under § 17 of the Act. The state court judgment establishes a prima facie case of a debt nondischargeable in bankruptcy. However, the bankrupt is entitled to refute that prima facie case. The bankruptcy court may consider all relevant evidence, including (but not limited to) state court proceedings, offered by the parties and requested by the court, and on the basis of the evidence determine dischargeability of the debt. We apply "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief", Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).
 
 
 30
 The judgment of the district court affirming the bankruptcy judge is reversed, and the case is remanded to the district court for further proceedings in accordance with this opinion.
 
 
 31
 ELY, Circuit Judge (concurring in part and dissenting in part):
 
 
 32
 I concur only in that portion of my Brother's Opinion which holds that the two lower courts erred in determining that Section 17(a)(4) of the Bankruptcy Act[1] was inapplicable under the facts as alleged by the judgment creditor, Lawrence T. Lasagna, Inc. ("Lasagna"). From the conclusion that Section 17(a)(8)[2] is applicable, however, I respectfully dissent.
 
 
 33
 In its original action in state court, Lasagna sought to recover from Progressive Farming, Inc. ("Progressive") and the three bankrupt appellees for tomato harvesting services rendered to Progressive by Lasagna. The state court awarded Lasagna as an yet unsatisfied judgment of $24,365.17, with interest and costs, against the three appellees, the sole shareholders of Progressive at the time the corporation became indebted to Lasagna. The appellees were held liable under the Alter ego theory for the corporate debt of Progressive and on the basis of having made fraudulent conveyances to themselves which rendered Progressive unable to pay its debt to Lasagna. An examination of the pleadings in the Bankruptcy Court and of the state court judgment makes clear that it was this looting by fraudulent conveyance which gave rise to the liability of the appellees to Lasagna. It is for this reason that I believe that the majority is right in holding that Lasagna alleged adequate facts to support a claim under Section 17(a)(4), the debt assertedly having been ". . . created by . . . fraud, embezzlement, misappropriation or defalcation while acting as . . . officer(s) or in any fiduciary capacity. . . .." 11 U.S.C. § 35(a)(4).
 
 
 34
 I disagree, however, with my Brothers in the resolution of the issue concerning the applicability of Section 17(a)(8).
 
 
 35
 The basis for that disagreement is Lasagna's failure to identify any "property," within the meaning of the Section, that could have been willfully and maliciously injured by the appellees. The majority seems to assume that the injured "property" was the unsecured debt owing to Lasagna for the tomato harvesting, the debt never paid because of Progressive's insolvency. Because that insolvency was assertedly caused by appellees' defalcations, the majority concludes that Section 17(a)(8) would, if the facts are as alleged by Lasagna, bar discharge of the state court judgment.
 
 
 36
 The District Court upheld the Bankruptcy Court's determination that Section 17(a)(8) was inapplicable because "(n)o injury has been done to any 'earmarked' property of the plaintiff-appellant (Lasagna) . . .." C.R. 72. With this conclusion, I thoroughly agree.
 
 
 37
 As I see it, the congressional intent is plainly apparent on the face of the statute. That intent was that the character of the interest alleged to have been injured should in fact determine dischargeability. It is only injuries to "property" that are not dischargeable. I recognize that the term "property" is so broad that it is not always capable of fixed interpretation.[3] But, because the operation of a discharge under the Bankruptcy Act "should be confined to those plainly expressed . . ." (Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)), I cannot join my Brothers in expanding the reach of Section 17(a)(8) beyond what I perceive to be its permissible limits. No decisions of our court, or any other,[4] support the result reached by the majority, especially not Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed.2d 754 (1904), a decision upon which the majority relies for the proposition that Section 17(a)(8) includes within its purview the debt owed by appellees to Lasagna.
 
 
 38
 In Tinker, the Supreme Court recognized that, in 1904, the law protected a husband's personal and exclusive rights in his wife with which there could be legal interference by another man's criminal conversation with the wife. Id. at 481, 24 S.Ct. 505. Such rights, by their very nature, were, of course, intangible. Yet, intangible though they were, the husband's rights were Identifiable and Exclusive to him. In recognizing that these legally protectible interests were of the kind that fell within Section 17,[5] the Supreme Court wrote:
 
 
 39
 (T)he husband has certain Personal and exclusive rights with regard to the person of his wife which are interfered with and invaded by criminal conversation with her; . . . that an assault of this nature may properly be described as An injury to the personal rights and property of the husband, which is both malicious and willful.
 
 
 40
 Id. at 481, 24 S.Ct. at 506 (emphasis added).
 
 And:
 
 41
 (T)he cause of action by the husband is based upon the idea that the act of the defendant is a violation of the marital rights of the husband in the person of his wife, To the exclusion of all others, and so The act of the defendant is an injury to the person and also to the property of the husband.
 
 
 42
 Id. at 485, 24 S.Ct. at 508 (emphasis added).
 
 
 43
 Here, Lasagna held no personal or property rights in Progressive "to the exclusion of all others." At best, Lasagna had an expectancy that it would be paid from the general assets of Progressive, a right deserving no greater protection under Section 17(a)(8) than that afforded to any other unsecured creditor. Moreover, there is no allegation in the record that appellees directed any of their activities directly at this generalized expectancy of Lasagna. Rather, the breach of duty by appellees, as found by the state court, was directed at Progressive, an entity in which Lasagna held no legally protectible interest that differed from that held by other general creditors.
 
 
 44
 The majority's view would be correct if the debt had been secured by specified collateral which had been converted by appellees. See, e. g., McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); In re Nance, 556 F.2d 602 (1st Cir. 1977); Probst v. Jones, 262 Mich. 678, 247 N.W. 779 (1933). Then, clearly, we could in good conscience write that appellees had deliberately injured "property" of the appellant. See First National Bank of Lansing v. Padjen, 61 Ill.App.2d 310, 210 N.E.2d 332, 334 (1965) ("That the mortgagee's interest in the chattel securing a loan is a protectible property cannot be doubted."). Here, however, there was no willful damage to any "property" of Lasagna; therefore, I am convinced that the lower courts were absolutely correct in holding that Section 17(a)(8) is not applicable. My conviction as to this is fortified when I compare Section 17(a)(8) to Section 17(a)(4), which clearly is applicable. Congress has provided one exception to discharge under the facts as alleged by Lasagna. To interpret Section 17(a)(8) as the majority has done not only is unnecessary, but also, I submit, expands the Section's meaning beyond all logical reason. I cannot conceive that the Congress, when enacting the Section, intended that its enactment should ever be given such an expansive interpretation.
 
 
 45
 As to the issue involving Section 17(a)(8), I would therefore affirm the judgment of the District Court.
 
 
 
 *
 The Honorable Edmund Port, Senior United States District Judge for the Northern District of New York, sitting by designation
 
 
 [1]
 Sections 35(a)(4) and 35(a)(8) provide:
 (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; . . . (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision.
 11 U.S.C.A. § 35(a)(4), (8) (West Supp.1979).
 
 
 [2]
 Nowhere in the legislative reports or debates is there any restriction placed upon the kind of property within the purview of the section
 
 
 [3]
 It is interesting to note that § 523(a)(2)(A) of the new Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A) (enacted under Pub.L.No. 95-598, § 101, 92 Stat. 2590 (1978)), effective October 1, 1979, specifically includes "services." "The effect of this is to overrule cases under the Bankruptcy Act that excluded from the concept of property services of all kinds, whether they be professional or otherwise." 3 W. Collier, Bankruptcy P 523.08, at 523-34 (15th ed. 1979)
 
 
 [1]
 11 U.S.C. § 35(a)(4)
 
 
 [2]
 11 U.S.C. § 35(a)(8)
 
 
 [3]
 Grappling with just such an attempt to define "property," the Supreme Court wrote:
 The accurate delimitation of the concept 'property' would afford a theme especially apposite for amplificative philosophic disquisition; but the bankrupt law is a prosy thing, intended for ready application to the everyday affairs of practical business, and when construing its terms we are constrained by their usual acceptation in that field of endeavor.
 At most it (property) denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business, and the same significance attaches to it in many carefully prepared writings.
 Gleason v. Thaw, 236 U.S. 558, 560-61, 35 S.Ct. 287, 288-89, 59 L.Ed. 717 (1915).
 
 
 [4]
 My research has uncovered no cases that have given Section 17(a)(8) protection to such an undifferentiated expectancy as has the majority here. To the contrary, in those cases dealing with the dischargeability of debts arising out of a bankrupt's "willful and malicious" interference with a creditor's ability to collect on his account, Section 17 "property" has been recognized to have been injured only in more limited contexts such, for example, as when the interference has been directed at security interests in real property, personalty, or accounts receivable. See, e. g., McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916) (corporate stock held as security for indebtedness); In re Nance, 556 F.2d 602 (1st Cir. 1977) (assignment of deferred wages); Baker v. Bryant Fertilizer Co., 271 F. 473 (4th Cir. 1921) (accounts assigned as security); Sommerfield v. Klinkowitz, 245 Wis. 619, 15 N.W.2d 850 (1944) (mortgaged property held as security); Probst v. Jones, 262 Mich. 678, 247 N.W. 779 (1933) (mortgaged property); Excel Finance Camp, Inc. v. Tannerhill, 140 So.2d 202 (La.App.1962) (mortgaged property held as security on indebtedness); Wheaton v. Chandler, 68 Ohio App. 474, 42 N.E.2d 193 (1941) (attorney's retaining lien); See also In re Blauweiss, 23 N.Y.S.2d 907 (City Ct. 1940) (conversion of emerald)
 
 
 [5]
 Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), was decided under the Bankruptcy Act of 1898, ch. 541, § 17, 30 Stat. 550 (1898). The exception to discharge in question here was then contained in Section 17(a) (2), which then, in relevant part, read:
 (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities . . . for willful and malicious injuries to the person or property of another . . ..